## JOHN HANSON THOMAS *against* JOHN DOUB.

Leave to file a supplemental answer must be accompanied with an affidavit.

An application to file an amended or supplemental answer, rests in the discretion of the court, and from a refusal to give the leave no appeal will lie.

The opinion of the late Court of Appeals in the case, is binding upon this court.

Effect of exception for the want of averments in the bill of complaint.

THIS is an appeal from a decree of the court of chancery, by John H. Thomas, one of a number of defendants, in a bill filed in that court by John Doub. The case has several times been brought into this court by different parties, having distinct and very often conflicting interests. J. H. Thomas is the only appellant in this case. But the transactions of the different parties, are so often connected in the preparation of the case for trial, that in the statement of the matters in controversy between these parties, the insertion of some matters which are applicable only, or in a great measure, to the contests between others of the litigants, seems to be unavoidable.

Thomas vs. Doub.

Abraham Barnes and wife, Melchior B. Mason, and John T. Mason, of Washington county, by deed, dated 11th day of October 1839, reciting, that "Abraham Barnes is indebted in various sums of money, and is desirous to make adequate provision for the early payment of the same in full;" and that "the said M. B. Mason and John T. Mason are severally bound together with the said Barnes for payment of some of said debts, and are willing, so far as respects their interest in any of the property in said deed mentioned, to subject the same in common with the property of the said Barnes to the payment of the said debts," conveyed unto William Price and David G. Yost certain real and personal estates belonging to Barnes, and real estate belonging to M. B. Mason, and other real estate belonging to J. T. Mason, in trust, to sell the same, and the proceeds and avails thereof, after the payment of expenses, and a commission of five per cent. to the trustees, to apply to the payment of all the debts of the said grantors, without any priority or preference, except as the same may exist by law.

The trustees, in execution of the trusts of the foregoing deed, made the following sales of Abraham Barnes' lands:

| | | |
|---|---|---:|
| 1840, April 17, to George Cromer, for | - - | $740 00 |
| May 19, to Francis Dodge, | - - | 32,500 00 |
| September 1, to George Feidt, | - - | 4,240 68 |
| September 1, to John Winter, | - - | 6,193 12 |
| 1841, October 1, to Francis Dodge, | - - | 5,175 00 |
| December 1, to Hagerstown Bank, | - | 21,000 00 |
| 1842, September 1, to Samuel J. Downey, | - | 5,250 00 |
| September 1, to Francis Dodge, | - | 180 00 |
| 1843, June 3, to George Ernst, | - | 2,525 00 |
| September 1, to Horatio N. Harne, | - | 2,900 00 |
| December 1, to John Hanson Thomas, | - | 11,298 00 |
| 1844, March 6, to Hagerstown Bank, | - | 10,000 00 |
| | | $102,001 80 |

Thomas *vs.* Doub.

#### OF JOHN T. MASON'S LANDS.

| | |
|---|---:|
| 1840, March 25, to John Doub,      -      -      - | $12,566 44 |
| 1841, December 1, to Hagerstown Bank,      - | 1,000 00 |
| 1843, October 1, to John Doub,      -      -      - | 967 50 |
| December 6, to John Hanson Thomas,      - | 2,300 00 |
| | $16,833 94 |

#### OF MELCHIOR B. MASON'S LANDS.

| | |
|---|---:|
| 1839, November 28, to George Cromer,      - | $5,250 00 |
| 1840, April 17, to Same,      -      -      -      - | 2,590 00 |
| 1842, September 1, to Samuel J. Downey,      - | 4,120 00 |
| | $11,960 00 |

The judgments recovered against the grantors in the foregoing deed were very numerous. Amongst others, at November term 1837, of Washington county court, judgments were entered against them jointly in favor of Brooks and Hotchkiss, Henry Tiffany, William Tiffany and others, and William McKim, and of John Trimble, use of the Bank of Baltimore.

At March term 1838, other judgments were entered against them, at the suit of Lynch and Craft, and of John W. Brown, use of Bank of Baltimore, and also against Barnes and M. B. Mason, at suit of Lynch and Craft. At March term 1845, all these judgments were revived against the original defendants and against the trustees, and all the purchasers from them, as terre-tenants of the lands conveyed in trust, as before stated, and were then entered for the use of Margaret A. Mason, wife of John T. Mason. Writs of *fieri facias* were thereupon issued, returnable to March term 1846, and having been laid on the lands originally belonging to John T. Mason, and purchased by Doub, as before stated, the latter, on the 17th January 1846, filed his bill of complaint in the court of chancery, against Barnes and wife, John T. Mason and his wife, Melchior B. Mason, Price, the surviving trustee, and the purchasers from him.

In this bill he charges, that he purchased a part of the estate, as before mentioned, for its full value, and has paid the

purchase money to the trustees, and obtained from them a conveyance. That the original judgment creditors had notice of the deed of trust shortly after the making thereof, and acquiesced in the assumption by the trustees of control over said property; that they suspended all proceedings on their aforesaid judgments, and by other acts indicative of their intention to look for payment of their claims to the proceeds of sales, which should be made by the trustees, gave credit to the trustees, and enabled them to make sales more eligible to the creditors than could otherwise have been effected; and that he, the complainant, was persuaded to purchase as aforesaid, and to make payments of the purchase money to the trustees, from his belief that the creditors would look to the trustees only for payment of their claims out of the proceeds of sales to be made as aforesaid. And as further evidence of the acquiescence and consent of the said creditors in the trust, he charges, that at and for some time after the date of said deed of trust, the said Yost was the attorney of record of the said Henry Tiffany, William Tiffany, Brooks and Hotchkiss, and John W. Brown, and that Price was attorney of record for the said William McKim, John Trimble, and Lynch and Craft. That if the complainant is at all responsible for the due application of the moneys received by the trustees as aforesaid, he is at least entitled to a discovery from the trustees of the manner in which the moneys received by them have been appropriated, and to have any fund yet remaining in their hands applied to his exoneration, and to the benefit of the incumbrances discharged by them for protection of his title. That the said trustees have on hand, undisposed of, about four hundred acres of land, which are reasonably worth about $14,000; and that said creditors, if permitted at all to proceed with their said executions, ought to be required in the first instance to exhaust their remedies against the said unsold lands; and if these should be insufficient to discharge said executions, then the said creditors ought to proceed against the purchasers in the reverse order of their purchases; so that the complainant ought not to be called on to contribute until all the

lands sold by the trustees after the sale made to him have been applied to the payment of the said judgments. That John Hanson Thomas (a purchaser of parcels of said lands, and as such, made a party to the bill,) made his said purchases long after the complainant had purchased. That in fact, no part of the purchase money agreed to be paid for said lands by the said Thomas, has been paid by him to the trustees; the said money being permitted to remain in his hands, under an impression entertained by Thomas and the trustee, that the trust fund, exclusive of the purchases made by the said Thomas, would be sufficient to discharge all the judgments of older lien, than a judgment which he had recovered against the said parties, and consequently, that the money in the hands of the said Thomas would be properly applicable to the payment of the incumbrances held by him. But in fact this impression is so far groundless in the result, that the judgments on which executions have been issued as aforesaid, are prior in date and lien to the judgment claim of the said Thomas. Hence the complainant is advised there is peculiar equity in requiring the said Thomas to pay in the amount of his purchases as aforesaid, for the benefit of the aforesaid judgment creditors, before the complainant is called on to pay a second time for the land which he purchased, and has already paid for.

The bill, therefore, prays, that an account may be taken under the direction of the court, of said trust estate, and of the receipts and disbursements by the trustees, and of the residue of the trust estate, and of the proceeds thereof, if any, in the hands of the trustees; and that the same may be applied to the discharge of any incumbrances yet outstanding, according to their just priorities; and that the complainant, as purchaser, may be protected in the enjoyment of the property purchased by him, against all the creditors of the aforesaid grantors; or if the court shall be of opinion that he was bound to see to the application of the purchase money, agreed to be paid by him as aforesaid, then that the judgment creditors whose claims are yet unsatisfied, may be compelled to take

their remedies against the surviving trustee, to the extent at least of any estate or effects now in, or which may have been in the hands of the trustees, and applicable to the payment of said claims; and especially may be required to proceed against the trust estate yet unsold, and in the hands of the trustee; and if the proceeds thereof should prove insufficient, then that it may be declared that the purchasers are responsible therefor in the reverse order of their purchases, and that the complainant may have such further and other relief in the premises as his case may require; and that the said judgment creditors may be enjoined from proceeding on their executions aforesaid, until the further order of the court.

The bill contained various averments impeaching the title of Mrs. Mason, as assignee of the judgments which had been entered for her use. But the answer very satisfactorily explains the transactions by which her interest was acquired, and it has been assumed, and is indeed conceded, that her title is above question. It will be unnecessary, therefore, to notice the passages in the bill and answer which refer to this subject.

An injunction was accordingly issued.

The answer of Mrs. Mason disclaims all knowledge of the matters stated in the bill, insisting however, on her right to the benefit of the judgments.

The answer of Lynch and Craft denies that they ever assented to the execution of the deed of trust from Barnes and others, to Price and Yost, or agreed to waive their rights or remedies as judgment creditors.

The answer of John T. Mason admits the execution of the deed of trust, and the sales by the trustees of the trust estate, as hereinbefore mentioned. It exhibits therewith short copies of all the judgments under and against the grantors, being in number more than one hundred, and for sums in the aggregate exceeding $150,000.

It avers that the trustees, upon accepting the trust reposed in them, never called upon the creditors to acknowledge said deed of trust, and to receive payment of their debts from said

trustees; and that defendant has been informed by the creditors referred to in complainant's bill, and believes that said creditors never did waive their legal rights under their judgments, and did not, in a formal way, acknowledge the said deed of trust. It states the efforts made by the defendant to excite apprehensions in the complainant, in regard to his safety as a purchaser, and the considerations which influenced the defendant in purchasing up the judgments mentioned in the bill, for and on account of his wife, and out of her separate estate; and avers that those purchases were not made until after the judgments had been revived on *scire facias*, as before stated, and until all defences had been concluded by the confession of such judgments. It admits that the trustees, Yost and Price, were attorneys of record for the judgment creditors, at and after the date of the deed of trust, as stated in the bill; but avers they were afterwards discharged because of their failure to enforce execution of said judgments, and new counsel were employed to enter up said fiats.

The cause being set down for hearing on the motion to dissolve, the chancellor, on the 11th day of March 1846, passed an order dissolving the injunction. The complainant appealed; and at June term 1846, of the Court of Appeals, the said order, so far as concerns the said John T. Mason and wife, was reversed, and the injunction originally granted, was revived and as continued against them. But the order, so far as regarded the judgments recovered by Lynch and Craft, was affirmed.

In the opinion delivered by Judge Archer, on that occasion, 4 *Gill*, 1, it is laid down, that if the judgment creditors assented to the deed of trust, and by their conduct induced the complainant and others to become the purchasers of the land bound by their judgments, and to believe that they would look to the trustees for the payment of their claims, and not to the liens created by their judgments, such conduct would furnish a valid equitable defence and protection against the execution of said judgments.

That Lynch & Craft, by their answer, had sufficiently de-

nied that they had assented to the deed of trust; and against such denial, it would not be sufficient for the complainant, in order to establish an equity against them, to prove that Price, one of the trustees, was the attorney of record of those creditors, and that proceedings on those judgments had been delayed after the execution of the deed of trust.   That Mason and his wife had not sufficiently negatived the equity stated in the bill.   But that independent of the equity arising out of the supposed acceptance by the original creditors of the deed of trust, they would have a right to levy their executions on the lands of any one of the *terre-tenants* purchasing any part of the trust estate.

The cause having been reinstated in the court of chancery, William Price, the surviving trustee, filed his answer, in which he states, that at the date of the deed of trust the real estate conveyed thereby, was estimated to be worth $210,000, whilst the judgments were supposed not to exceed in amount, $150,000; and states that the depreciation in the value was owing to efforts made, and successfully made, to discredit the title.

| | |
|---|---:|
| That the proceeds of sales of Barnes' lands were - - - - - | $104,782 32 |
| And the payments made for judgments, taxes, and other claims, charging those lands, amounted to - - - | 114,756 62 |
| Making an excess in disbursements above receipts of - - - - | 9,974 30 |
| That the proceeds of sale of Melchior B. Mason's lands were - - - | 13,063 14 |
| And payments made on account, - | 14,010 62 |
| Making an excess in disbursements, above receipts, of - - - - | 947 48 |
| That the proceeds of sales of John T. Mason's estate were - - - | 16,876 17 |
| And payments on account, - - | 10,634 16 |

Making an excess in receipts above dis-
    bursements of -      -      -      -      $6,242 01

That the trustees were induced by their confidence in the
sufficiency of the assetts, at least to meet the judgments, to
pay money upon, and in satisfaction of younger judgments,
while elder judgments were left unsatisfied. That by the
great, constant and pressing importunities of John Hanson,
Thomas and John T. Mason, the trustees were persuaded to
pay upon a judgment of the said Thomas, against Barnes
and Mason, at least $9,000, as defendant now believes be-
yond the amount to which the said judgment can be shown
to be entitled; that the entire payments on the said judg-
ments amounted to $15,646.42. That the defendant, Price,
was counsel of record for McKim, Trimble, and Lynch &
Craft; and Yost was counsel of record for Brooks & Hotchkiss,
Tiffans and Brown; and defendant believes and avers that
the said persons were notified by said Yost, of the said trust,
and that they assented to the same.

Francis Dodge, a purchaser from the trustees, by his an-
swer admits, that on the 26th May 1840, and 16th September
1841, he purchased of the trustees, in two parcels, $619\frac{11}{16}$
acres of the Montpelier estate for the aggregate sum of
$37,885.93, which, with interest to the amount of $2,446.50, he
has fully paid to the trustees. This purchase he applied as
follows: on the 1st February 1841, he paid to John Hanson
Thomas, as assignee of a judgment recovered by Dorsey vs.
Barnes,      -      -      -      -      -      $12,442 00
14th May 1842, to Evan T. Ellicott, executor of
    Bolton Jackson, on Judgment vs. Barnes,   -   5,000 00
21st October 1842, on same judgment,      -      3,000 00
9th February 1842, to Jonathan J. Wilson, on
    Judgment vs. Barnes,  -      -      -      6,000 00
                                              _____
                                              $26,442 00
15th February 1843, on several judgments re-
    covered by Fayette M. Ringgold, and Re-
    becca B. Ringgold vs. Barnes,      -      $1,310 31

And to trustees, for their commissions on his pur-
chases, and in payment of divers other judg-
ments, binding the lands,      -      -        $1,000 00
11th December 1844, the residue was applied to
payment of several other small judgments,
which had been assigned to the trustees,      1,347 49
                                             _____
                                              $30,099 80

That assignments were taken to the defendant from the said
judgment creditors, at the time he advanced and applied his
moneys as aforesaid, and the same were entered for his use;
and he insists, that as his moneys have been so applied, he is
not bound to contribute to the payment of the judgments yet
outstanding.

The answer of John Hanson Thomas, a purchaser of par-
cels of trust estate, admits that he was a judgment creditor
of the grantors, and as such, assented to the conveyance, and
to the administration of the trusts therein created by the
trustees; that at the date of the deed of trust, he owned and
held three judgments: 1, a judgment rendered 2nd April
1832, vs. Barnes and others, in favor of Frederick Dorsey,
and another, use of the bank of Westminster, and which had
been assigned to the defendant; 2, a judgment rendered 15th
January 1831, vs. Barnes and Melchior B. Mason, in favor
of John Blackford, and assigned to defendant; 3, a judg-
ment rendered 3rd January 1839, against Barnes, Melchior B.
Mason and John T. Mason, in favor of this defendant, for
$15,500, with interest and costs.

On the first of these judgments, he received from the trus-
tees, a payment of $720, and assigned the residue thereof to
Francis Dodge, a defendant. On the second judgment he re-
ceived from the trustees in money, the sum of $2,600; and
on the 24th of February 1844, he purchased from the trustees
a part of the trust estate originally belonging to Barnes, for
the sum of $11,290.54, on the express agreement that the
purchase money was to be credited in said judgment.

On the third judgment, he received payments 9th January
1840, in money, $2,800; 17th April 1840, in money, $5,000;

and also the several amounts in land, in the assignment of a claim, and in the several notes of the trustees as specified in the agreement, exhibit No. 1, filed with the answer. That as between this defendant and the trustees, those payments cannot be reclaimed, and defendant denies that he can be made accountable therefor to the complainant. That the defendant is ignorant of the sources whence the sums of $2,800 and $5,000, so paid to him were derived; but assuming them to have been parcel of the proceeds of sales of the estates of M. B. Mason and John T. Mason, it is insisted that the defendant will not have received more out of the estate of John T. Mason, than he was properly and legally entitled to receive from said trustees.

The exhibit No. 1, referred to in the answer, purports to be an agreement between the trustees on the one part, and John Hanson Thomas on the other. It is dated on the 23rd February 1844, and stipulates that the trustees shall pay to Thomas on account of his third judgment, the sum of $5,416.42, by conveying to Thomas parcels of the trust estate, valued at $2,312.50; by assigning to him the note or obligation of Doub, the complainant, to the trustees, for the sum of $967.50, given to secure the payment of the purchase money of that part of the estate which was sold to Doub by the trustees, on the 1st October 1843; and by giving him the notes of the trustees for the sum of $2,136.42.

It is further stipulated, that Thomas is not to pay for said land otherwise than by crediting its value on the said judgment, and that such credit is not to be absolute, unless the title which the said Thomas shall acquire under the conveyance from the trustees, shall be good and unincumbered and indefeasible; that the trustees are to extinguish all prior liens on the lands to be conveyed as aforesaid, and that Thomas is to hold said land, the note or obligation of Doub, and to be entitled to require payment of the notes to be given him by the trustees, even if it should thereafter appear, that the assetts in the hands of the trustees would not avail to pay so much on said judgment.

Thomas *vs.* Doub.

On the 20th September 1847, the complainant filed his amended bill of complaint against John Hanson Thomas, in which he charges that the judgment of the 9th January 1839, was recovered in execution of a corrupt and usurious agreement made between the said Thomas and Barnes, and whereby the said Thomas on a loan made by him to the said Barnes, reserved usury or interest to himself after a greater rate than six per cent. per annum.   That the said Thomas having understood that the said Barnes was greatly in want of money, proposed to said Barnes to loan and deliver to him a quantity of bank stocks and other stocks, then held by the said Thomas, provided the said Barnes would accept the same at the par value thereof, or at a yet greater value, and would secure the repayment of said value by confession of a judgment by the said Barnes, and by the said Masons in favor of the said Thomas.   That at the said time it was known to the said Thomas, as well as to the said Barnes, that the said stocks were then greatly depreciated in value, and would yield in the market, no more than two-thirds of the sum for which the said Thomas proposed they should be taken by the said Barnes, and it was well understood between the parties, that the said Barnes would accept said stocks, only as a means of raising money for the supply of his necessities.   That the pecuniary wants of the said Barnes, compelled him to accede to the aforesaid proposal of said Thomas; that he did give his note, with the said Masons as his sureties, for the par value of the stocks, estimated at the sum of $15,500; that judgment was thereupon entered in execution of the aforesaid agreement on the part of the said Barnes, after which the aforesaid stocks were delivered to said Barnes, and by said Thomas, as his agent, they were sold, as was contemplated, at prices, which in the aggregate yielded for the whole, less than $8,000. That by reason of the usury aforesaid, the said judgment was absolutely void, or at the least ought to stand only as a security, for payment of the sum of money actually realized by the said Barnes by the sale of said stocks.   The bill therefore prays a discovery as to said agreement; an account of the pro-

ceeds of sales of the stocks sold as aforesaid, and general relief.

To this bill John Hanson Thomas, demurred on the following grounds :

1st. That in said bill the complainant has not entitled himself to any relief, nor to any discovery touching the matters therein complained of.

2nd. That the original bill and amended bill put in issue several distinct causes of suit, and are therefore multifarious.

3rd. That said bill does not tender payment of the money actually loaned, with interest thereon.

The chancellor, by his decree, on the 9th of December 1847, dissolved the injunction before granted, overruled the demurrer of John Hanson Thomas, and directed him to answer by the 1st day of February then next; and to pay a fine of five pounds with costs; directed an account to be taken for the purpose of ascertaining the sums to be contributed by the several purchasers from the trustees, towards payment of the judgments mentioned in the proceedings; and also an account as against Price, surviving trustee.

From this decree separate appeals were taken by the complainant Doub, by the defendant John Hanson Thomas, and Francis Dodge, who had purchased parcels of Barnes' lands.

On the appeal of Dodge, so much of the chancellor's decree, as subjected the purchases made by Dodge to contribution as prayed, was reversed. And in effect all the purchasers of parcels of Barnes' lands, as stated in the bill, are protected from contribution.

On the appeal taken by John Hanson Thomas, the decree of the chancellor was affirmed. The opinion of the Court of Appeals on this part of the case, is here inserted at large.

"John Hanson Thomas, was made a defendant to the complainants original bill in this cause, as a purchaser of parcel of the lands from the trustees, long after the complainant had purchased. It is alleged, that no part of the purchase money agreed to be paid by him, has been paid to the trustees, but was reserved in his hands, under an impression entertained

both by the trustees and himself, that the trust fund, exclusive of these purchases made by him, would be adequate to the discharge of all the judgments of older date and lien, than the judgment recovered by Thomas against the grantors in 1839, and consequently that the money in the hands of Thomas, would be properly applicable to the payment of the incumbrance held by him. The bill, however, affirms that this impression is not sustained by the result, but that the judgments of Mrs. Mason, on which the executions have been issued, are prior in date and lien to the judgment recovered by Thomas, and that therefore Thomas should be required to pay in the purchase money due from him, for the benefit of these prior judgments, before the complainant is called upon, a second time, to pay for the land which he had purchased and already paid for. The answer of Thomas admits, that at the date of the deed of trust, he held three judgments against the grantors, on the first of which he received a payment, and then assigned to Dodge. On the second he received part in money, and purchased from the trustees a part of the trust estate, originally belonging to Barnes, on the express condition that the purchase money was to be credited on said judgment.

On the third judgment he received payments in money, $2,800, on the 9th of January 1840, and of $5,000, on the 17th of April 1840, and under a written agreement between him and the trustees, on the 23rd of February 1844, he received from them, by conveyance, parcels of the trust estate valued at $2,312.50, the note or obligation of Doub, the complainant, to the trustees, for the further sum of $967.50, given to secure the payment of purchase of part of the trust estate sold to Doub, and the individual notes of the trustees for the sum of $2,136.42.

This agreement further stipulates, that Thomas is not to pay for said land, otherwise than by crediting its value on said judgment, and that such credit is not to be absolute, unless the title which the said Thomas shall acquire, under the conveyance from the the trustees, shall be good and unincumbered and indefeasible ; that the trustees are to extinguish all

34 v.1

prior liens on the lands to be conveyed as aforesaid, and that Thomas is to hold said lands, the note or obligation of Doub, and to be entitled to require payment of the notes, to be given him by the trustees, even if it should thereafter appear that the assets in the hands of the trustees would not avail to pay so much on the said judgment. After this answer of Thomas, the complainant filed his amended bill, in which he charges that the judgment of the 9th January 1839, was founded upon a corrupt and usurious agreement between Thomas and Barnes, the particulars of which are set forth and charged in the said amended bill, claiming that by reason of said usury the judgment was absolutely void, or at least, ought to stand only as security for payment of the sum actually received by Barnes, upon the transaction between them; and then prays a discovery as to the agreement, and such relief as this case may require. To this amended bill Thomas demurred, and the demurrer being by the chancellor overruled, that decision is now before us for review. The grounds insisted upon in support of the demurrer are :

1st. That by the amendment, the bill as amended has been rendered multifarious.

2nd. That complainant has no interest, right or title to implead this appellant, touching the matter of said amended bill.

3rd. That the complainant, conceding that he has any interest or right to implead this defendant, touching the consideration of said judgment, ought to have tendered his willingness to pay the amount actually due.

4th. That in the averments, scope and object of his bill as amended, there is no equity shewn, entitling the complainant to the discovery of the relief prayed, or to any discovery or relief, touching the matter of said amendment.

The first objection is that Doub, by his amended bill, has departed from the design of his original complaint, and blended with it other matters, out of the scope of, and inconsistent with it, and it is thus charged to be multifarious, because in the original he is charged as a purchaser of the lands, and

called upon to pay in the purchase money to be applied to elder judgments, when by the amended bill the complainant arraigns him as a creditor, and seeks to be relieved against the judgment, as obtained in execution of an usurious agreement. It will be remembered that the bill seeks for an account, and the proper application of the funds of the trust, to the discharge of the judgments, according to their just priorities, alleging that Thomas is both a judgment creditor of the grantors, and a purchaser of lands from the trustees, the purchase money for which still remains in his hands, under the assertion, that (by the agreement with the trustees,) it is properly applicable to the payment of his judgment. The complainant, on the part of judgment creditors, prior in date to the judgment of Thomas, is called upon to pay a second time for the lands purchased by him, and insists upon his equity in requiring Thomas to pay in the amount of his purchase money, in the first instance, for the benefit of these prior creditors, and further, in his amended bill, he impeaches the validity of this judgment of Thomas, on the ground of usury, and claims that if not void, it should stand only as a security for the sum actually advanced by Thomas to Barnes. That is to say, that in the account with Thomas and the trustees, in the credits to be allowed upon his judgment in the proper administration of this trust, he is first to be postponed to the elder judgments, and then is not to be let in upon a basis more comprehensive than the amount actually paid by him. There is, then, no inconsistency here, the whole transaction being predicated upon one and the same judgment, and when the purchase money is claimed to be set off by Thomas as a credit against this judgment, it is the right of Doub, who is exclusively affected by it, to inquire into the validity and consideration of the judgment, and the relation in which it stands to the other judgments sought to be enforced against him. If, as claimed in the original bill, Thomas was required to pay in his purchase money, Doub would be relieved to that extent from the judgment of Thomas operating upon the fund, unless in its order post-

Thomas *vs.* Doub.

poned to Mrs. Mason's, and there the scope and objection of the bill against Thomas, is to obtain relief against the effect which the trustee and Thomas have agreed to give to his judgment, by a compromise, which makes it available in advance of the others, and upon a condition that violates the trust deed, unless the prior judgments can be first liquidated from the trust funds. But for this judgment, Thomas, as the agreement shows, would not have purchased land, or, if an unconditional purchaser, must have paid the purchase money, against which he now sets off his judgment. The relief then prayed in the bill is essentially and virtually against the operation given to this judgment, and there is, therefore, no inconsistency in the amended bill, which questions the amount of the judgment, and seeks to reduce it to its proper standard and value in a court of equity. For besides the value of the land which he purchased, and for which he credits the trust fund upon his judgment, (and which it is the object of the bill to bring in money into the hands of the trustees,) it is alleged, that if the actual debt due to him be discovered, it will result that he has received more than his actual principal and interest, even without regard to the question upon the priority of the liens.

"Multifariousness is said to be the blending in one bill, matters which are in their nature separate and distinct." *Story Eq. Pl.*, 224. "Different subjects which may embarrass the defendant in his proper defence against each, and may require different proceedings or decrees on the part of the court." *Same,* 231. "But not so, if there are no good causes of complaint, growing out of the same transaction, when all the defendants are interested in the same right, and where the relief against each is of the same general character." *Same* 233 '34, *(note.)* And 5 *Paige R.*, 160.

The complainant's bill is precisely of this character. He, with defendant, was a co-purchaser of lands under this deed of trust. By reason of the alleged misapplication of his purchase money, the judgments against his lands so purchased remain open. To relieve himself he avers the consent of the judg-

ment creditors to the deed, and the proceedings of the trustees under it, and (failing in this) he questions the amount and validity of these judgments, calls upon the purchasers to pay in their purchase money before he is called upon to pay again, and claims from the other purchasers under the trust, contribution in aid and relief of those judgments still binding on his purchase. The enquiry is not whether each defendant is connected with every branch of the cause, but whether the plaintiff seeks relief in respect of matters which are in their nature separate and distinct. *Daniel's Ch. Pr.,* 439, 449. *And Attorney General vs. Goldsmith Co.,* 5, *Sim.,* 670 '75.

But it is said, that there is an obvious distinction here, where the party seeks not only to be relieved from the excess of usury, but the just debt; the principal and interest received by Thomas is invoked (by contribution) in aid and relief of the complainant, thus cutting off the excess of his judgment, and claiming besides an abatement from the true amount which the rule of equity awards him, conceding that Doub may properly implead the defendant in relation to the objects of his bill. It is not perceived that any violence is here done to the rule and to the just principles, which must always control a court of equity.

If it is just established that the judgment cannot avail Thomas for more than the amount actually due to him over of the usurious excess, why should that judgment thus adjusted, stand afterwards in relation to the liens in a better and preferred condition to elder judgments? Not because it has been paid by the trustees, for the payment was improperly made. It is the very ground upon which it is impeached, and the burden of complainant's bill is, that nothing should have been paid, neither the usurious interest, nor the actual amount advanced, in preference to the elder judgments which he is now called upon to satisfy, and thus two distinct equities are raised:

1. That the excess of usury to which defendant has no right, shall go to reduce these elder judgments; and 2nd, that the amount which he received from the trustee over and above what his judgments would be entitled to in their order

Thomas vs. Doub.

of priority, should be brought in to lessen Doub's contribution. This is the relief asked by the complainant, and presents to the consideration of the court the two subjects in a view entirely compatible with each other.

The whole matter of complainant's bill is, therefore, entirely homogeneous. The different causes of complaint are not inconsistent or different in their nature and character. They all grow out of the same transaction, in which, in substance, but one question of right is involved as regards the defendant, Thomas; the right of the complainant to be relieved from the preference and effect given to this alleged usurious judgment, by the agreement and the acts of Thomas and the trustees. In this view, the objection of multifariousness is not sustained. And is there no right here on the part of the complainant to implead this defendant? no privity of right and obligation between them, as the purchaser of J. T. Mason's land? Doub's purchase money ought to have been applied to the judgments against Mason. It was the duty of the trustees so to apply it; such application would have relieved the land from the judgment which Mrs. Mason, (as assignee of them,) now seeks to enforce, and in any event would have left Thomas' judgment unsatisfied. The payment of the trust money to Thomas, who was, under the circumstances, not entitled to it, whether the money of Doub or other purchasers, established such a relation between all of them, that if any one of them is called upon to pay again, there is such privity between him and all the others, that he can seek in a court of chancery to have the money restored and properly applied. In equity the money paid to Thomas, or the piece of land sold to him, becomes the fund of the party who is prejudiced by the misapplication, and his resort is not alone against the trustees in this case, but he may follow the fund. Thomas, as a purchaser of the lands, must be considered as such, independent of his judgment and agreement. The purchase money ought to be paid to the trustees as part of the general fund for the purposes of the trust, and cannot be retained by him in satisfaction of his judgment, unless the prior judgments

Thomas *vs.* Doub.

against the grantors are satisfied.   For the elder judgments, unsatisfied, may be levied upon this land, even if paid for by Thomas to the trustees, and he would lose the money paid.

If, on the contrary, the elder judgments are satisfied, there would be just pretext for withholding the purchase money, as the trustees would only pay it back to him in discharge of his judgment under the terms of the deed, or in his order of priority in law, which the terms of the deed could not affect, lest the elder judgments might remain a charge upon the land bought by him, the purchase money has been withheld, and if the proceeds of the sale of all the lands left nothing to be applied to his judgment, but on the contrary shewed a deficit, he must be called upon to pay, or the lands bought by him are liable to be sold for the deficiency.   No arrangement with the trustees could let him in before his judgments attached in their proper order.   He is therefore a naked, unconditional purchaser, without the shadow of right or pretext to set off his judgment of 1839, against the claim of the trust to the purchase money, and is to be treated as such in the further administration of the trust.

Assuming that the prior incumbrances had all been satisfied, the proper period would then arrive for the liquidation of his judgment out of the amount of his purchase money. In adjusting his claim, are these judgments conclusive or open to enquiry?  Suppose there be subsequent judgment creditors, likely to be excluded from the fund, may they not challenge the legality of these judgments, or the amount claimed under them?  May they not be impeached on the ground of fraud, collusion, payment or usury, with a view to defeat them, and let in the subsequent liens?   And is there no such privity between the several parties to these judgments, as to warrant such enquiry?  It is the constant practice to permit a subsequent mortgagee to question the title and claim of a prior incumbrance, and to take advantage of the legal defect or taint of the elder incumbrance.   It is the right of every party in equity to question the title or the legality of a claim that precedes his own, and, by a successful impeachment, to render

it void and defeat it:—and what is Doub's position here?   Is he less a privy here, than' if he were a judgment creditor postponed to Thomas?   He is called upon to pay the judgments of Mrs. Mason, which are prior in lien to the judgment of Thomas here in question.

He has already paid the full value of his lands, but, by the former decision of this court, he cannot extricate them from the grasp of these liens.   The land purchased by' Thomas and not paid for, is equally liable in equity to the payment of these judgments, and Doub's purchase may be further liable to contribute to the liquidation of succeeding judgments in their order, until he has paid for his purchase over again.   If then subsequent judgments have already been paid, and with Doub's money, (as necessarily they must be,) does he not stand subrogated in the place of these subsequent creditors? (as if they were parties called to refund?) and is he not interested in knowing the character, the extent and legality of all the preceding judgments?   That of Thomas is alleged to be tainted with usury, and if it can be successfully impeached, who more concerned than Doub in defeating, that he may thereby lessen the amount of his contribution?   Has he not, then, such privity and interest here, as to entitle him to call on Thomas for a discovery, and is not the discovery material to the relief sought by the bill?   We are of opinion that on these grounds he is properly in court.'

Still it is argued, that conceding this right, Doub is yet bound by the rules of equity to pay or tender the amount admitted to have actually passed in the transaction' between Barnes and Thomas, before he can maintain his bill.   The rule is undeniably so, where the party seeks to relieve himself from the payment of the sum claimed upon the contract. But when the contract or the judgment is' already satisfied, and the party seeks to have the excess accounted for and restored, the reason of the rule ceases.   The defendant has already received all, and more than he is entitled to, as the complainant alleges.   The tender contemplated under the rule, is not mere form, and to suppose it necessary to pay, or

at least to tender payment of an amount over again, where the allegation is, that the defendant received more than his due, would be a departure from the paths of equity. A willingness to allow all that is actually and fairly due, is the equitable acquirement, and this the complainant has expressly reserved to the defendant in his bill. He asks for a discovery of what was actually paid by Thomas to Barnes, and insists, that the judgment is void by reason of the usury, and that at least it ought to stand only as a security for the sum actually realized by Barnes from the transactions between them: and is not this, under the circumstances of this case, if not actual tender, equivalent fully to what the rule requires? An offer to do equity before he asks relief? If he is to pay down the actual principal and interest of this debt, that is, in fact, to pay the debt over again before he can even ask relief, the doors of chancery are closed upon him. It is a denial of all relief. The case of *Jordon vs. Trumbo*, 6 *G. & J.*, 103, it is true, asserts the rule in all its breadth, but evidently applicable only where relief is sought against payment and compliance with an usurious contract. For it is said, after payment of the claim, he may pray to be relieved as to the amount paid beyond what was legally due and recoverable; "of course, not assuming that he shall tender to pay again what he has already paid, and seeks to recover back again by his bill." The cases cited from Paige do not contravene this position. In *Judd vs. Seaver*, 8 *Paige*, 548, the bill was for relief against an usurious contract; there was no offer to pay anything. By the court there are cases that decree sometimes payment of the amount equitably due, but it is where the offer is to pay whatever should be found to be due, and waiving a forfeiture as to everything except the usurious premium. And in 3 *Paige*, 531, it is said complainant cannot call on defendant for discovery of the usury charged, unless he pays or offers to pay the amount equitably due, for the reason that he is not bound to make a disclosure that might subject him to forfeiture or loss of the whole, or any part of the money actually lent. Therefore, where the complainant submits to

35    v.1

allow what was actually due, the reason for the rule is gratified. It is no more than the standing maxim exemplified, that he that will have equity must do equity.

Upon the last point of objection here taken, we have before intimated that complainant, in his bill, as amended, has shown himself entitled to the discovery and the relief prayed. The bill charges him as the purchaser of lands under the same trust under which the complainant purchased, and that he has paid no part of his purchase money. His answer sets up the agreement with the trustees, by which the amount of his purchase was to be credited upon the judgment in question. The amended bill charges, that this judgment was obtained upon an usurious agreement, and prays for discovery. When Thomas purchased of the trustees, he knew of the existence of this deed of trust, and the agreement shews, that he treated with Price and Yost as trustees, and has thus assented to the terms of the deed. He stipulated with them to make the sale only conditional, unless the title under their conveyance should prove unincumbered. He takes the land under a judgment which could not legally be paid, until every dollar of Mrs. Mason's assigned judgments should be paid. Doub is now called upon to pay these judgments, from the misapplication by the trustees of his purchase money, and defendant, who has paid nothing, wrests from him the only remnant of property from which he could be secured. He receives from the trustees, Doub's bond for the lands purchased by him, which ought to have been applied to extinguish prior liens, and by the receipt of moneys, countenances a clear perversion of the trust, and prevents the proper application of the fund. This agreement with the trustees to extinguish prior liens, shews that he knew such existed, and the only liens then outstanding were Mason's, and Lynch and Craft's. When he received from the trustees the sum of $7,800, he must have known from this stipulation that he was taking it to the exclusion of elder judgments, and by assenting to the deed as he did, why should not the parties aggrieved by this misapplication have redress against him? The trustees

could not bargain him into a position more advantageous than his judgment or the deed gave him, and it is not, as is contended, a question only between the creditors and the trustees, or between the purchasers and trustees, or between himself as a purchaser and the trustees. By the provision of the trust, complainant has been injured, and his purchase put in jeopardy by the wrongful act of the defendant and the trustees. His privity with all the parties is established by his purchase with the defendant from the same trustees, and his right and duty to look to the proper application of the trust fund, of which defendant still retains a portion in his hands, as the bill alleges. It is nothing to the purpose to say, that Doub has forfeited his standing in a court of equity by his own negligence; that he had warning of the misapplication of his money, and yet continued to rely upon the trustees : authorities have been cited to shew that coming into a court of chancery he must shew a case free from any laches on his part, and that such laches existing, must rule him out of court. To the full extent, this principle has been applied to him in the case of Lynch and Craft, and the preceding cases. He has paid the full amount of his purchase money and more, and has received no title yet. He has suffered the penalty of his neglect, to look to the application of his moneys to the judgments by which the lands were bound. But how can this avail the defendant here? If Doub's money had been altogether applied to the judgments on the Masons' land, other judgments prior to Thomas' would still bind the land which Thomas claims to have purchased in extinguishment of his judgment. This seems to have been in the view of Thomas, by the arrangement he entered into, that the trustees were to extinguish all prior liens on the land to be conveyed to him. It was no sale unless the purchase money could be credited in value on the judgment. Upon what equity can such an agreement be supported to the prejudice of other creditors, whose rights under the deed and in priority of law are superior to his? The trustees may have assumed that the prospective state of the fund would have justified this arrangement, but the as-

sumption is now asserted to be groundless.    The complainant's lands are now under execution, to pay these elder liens which he has once before paid to these trustees.    By the misapplication of the funds they have anticipated the payment of Thomas' junior judgment, whether out of complainant's identical money or not, is immaterial.    It was at all events, a fund that should have been applied to these elder judgments, and no agreement between Thomas and the trustees can be permitted to divest it, particularly when it compels complainant to pay a second time for his purchase, while Thomas, upon the hypothesis that the trust fund is exhausted upon the judgments preceding him, pays not one cent for the land conveyed to him by the trustees.

Thomas can, therefore, have no claim to profit by the complainant's neglect.    But for the agreement between him and the trustees, the lands and funds applied to his judgment would still be at the disposal of the trustees for the relief of Doub.

That agreement cannot, in any form, be permitted to overreach the trust, or the prior creditors, to the prejudice of their judgments.    Doub in every equitable point of view, his lands being held liable for those judgments, is one of those creditors, and has a just claim in a court of equity to the relief prayed. The chancellor's order overruling the demurrer, is therefore affirmed."

On the appeal taken by Doub, the court affirmed so much of the decree as dissolves the injunction, which had been previously granted to stay execution of the judgment recovered by William McKim, against Barnes and others.

But the court being of opinion, that the substantial merits of the case would not be determined by reversing or affirming the residue of said decree, and that the purposes of justice would be advanced by permitting further proceedings in this cause, it was adjudged and ordered, that the cause be remanded to the court of chancery, that such further proceedings may be had thereon, by amendment of the pleadings or introducing further testimony, or otherwise, as shall or may be ne-

cessary for determining the cause on its merits, and as if this appeal had not been taken, and as if the decree from which the appeal was taken had not been passed, excepting such part of the decree as was thereby affirmed.

Those decisions were made at December term 1849, of the Court of Appeals; and on the 28th February 1850, the complainant Doub filed his petition in the court of chancery, to reinstate the cause. He states the reversal of the chancellor's decree, on the appeal of the said Dodge and others: that the decree is equally erroneous, as against all the purchasers of parcels of the estate of the said Barnes, and he therefore prays, that his bill may be dismissed as against the defendants Francis Dodge, George Feidt, John Winter, George Ernest and Horatio N. Harne, who are sued as such purchasers.

And after speaking of the claims of Mason and wife, he prays that the defendant, John Hanson Thomas, may be required to answer the amended bill filed against him.

On the same day, viz., the 28th February 1850, it was ordered that the cause be reinstated as prayed; that the bill be dismissed as against the parties named in the petition; that the defendant, John Hanson Thomas, answer the amended bill by the 10th day of April then next; and that a commission be issued to the Baltimore commissioners, to take testimony as prayed.

The answer of John H. Thomas was filed, and then the amended bill against him was dismissed by the complainant.

On the 7th April 1851, the defendant, John Hanson Thomas, filed his petition for leave to file an amended and supplemental answer. He states, that it is or may be material to the admissibility of evidence in that behalf, that he should in his answer state more definitely and particularly the facts in relation to the receipt of the two several sums of $2,800 and $5,000, in his original answer, admitted to have been paid him in part of his last judgment; and that he should state more fully and in detail, the history or the making of the agreement filed with that answer, and the actual circumstances under which the same was made.

The amended and supplemental answer which accompanied the petition, denies that the said sum of $2,800, was derived directly or indirectly from the proceeds of sales of the trust estate. The defendant urging the payment of his last judgment, the trustees prevailed on Mrs. Eliza Sprigg to advance said sum of $2,800, which was to be applied in the purchase of so much of said judgment on her account. The money was received by the defendant, under the arrangement for a purchase on account of Mrs. Sprigg, of a part of his judgment; and pursuant thereto an assignment was executed by the defendant, of a part of his judgment in favor of Mrs. Sprigg, which was forwarded to the trustees, and was at one time on file in Washington county court. At a subsequent date, however, this assignment was returned by the trustees, and at their request, the defendant gave them a receipt, acknowledging the payment to him by the trustees, of the said sum of $2,800, on account of the judgment.

That the payment of $5,000, was made by the joint note of the trustees, in favor of William Schley, for that sum, dated 15th January, at ninety days, which was discounted at the Farmers and Merchants Bank, and the proceeds received by the defendant. And for the accommodation of the trustees, this note was renewed for a lesser amount. The defendant avers that the note for $5,000, so given by the trustees, was intended by them to be a personal engagement, and as such, was accepted by the defendant; and there was no understanding or agreement, or undertaking, that the same was to be paid out of the trust funds received or to be received by the trustees, or that the same was not to be paid, in case sufficient funds were not received or should not be received by them, or that in any event the sum so received by the defendant should be refunded.

The defendant denies that the complainant has any equity, to require him to account for either of said sums of money; more especially as the transactions between him and the trustees, actually occurred before the complainant made his purchase from said trustees, and when both of the trustees were

of large pecuniary credit, and in a condition to assume per-
sonal responsibilities. He avers and is ready to prove, that
neither of said sums of money were derived in whole or in
part, from the proceeds of sales of the trust estate.

That the sum of $5,416.42, received under the agreement
between the defendant and the trustees, which is referred to
in the original answer, the notes of the trustees are yet un-
paid, and even if paid, would in no wise effect the question
between the complainant and the defendant.    The defendant
admits that he received of the complainant the sum of $967.50,
assigned to him by the trustees, and also a conveyance from
the trustees, for the land mentioned in the agreement at the
price stipulated, of $2,312.50, both of which sums are par-
cels of the proceeds of the trust estates mentioned in the pro-
ceedings.   But to sustain his right to retain these sums, he
refers to the matters stated in his original answer; and he in-
sists, that if the validity of the agreement between him and
the trustees, can in any respect be questioned, then John T.
Mason will be a necessary party in his individual capacity,
and will be answerable even to the defendant, because of his,
the said Mason's privity in the said agreement.

The defendant admits that he was aware, as was also the
said John T. Mason, that he incurred the risk of losing the
said land by the enforcement of unpaid prior judgments
against the said John T. Mason.   But he insists that as be-
tween the complainant and defendant, he denies that the for-
mer has any right to complain of the application of said sums
to the credit of the defendant's judgment, since the com-
plainant's neglect to see the application of his purchase
money, is the principal, if not only cause of the existence of
elder judgments remaining open and unsatisfied; that the
complainant was apprised by the said John T. Mason of the
misapplication of the trust funds by the trustees, and was ad-
vised by him to inquire into the matter and take measures
necessary for his own protection; but the complainant failed
to do so.   And it is further averred that the proceeds of sales
of the said trust estates, if properly applied, would not only

have sufficed to discharge all prior liens, but also satisfy the entire balance due on the defendant's judgment.

The defendant further avers, that on the 14th November 1843, he sued out a *scire facias* to revive his said judgment against the original defendants, the trustees and the purchasers under them, including the complainant; and at November term 1844, of Washington county court, a fiat was entered thereon. This judgment, it is insisted, is conclusive against the complainant and all other *terre-tenants*, of the right of the defendant to have satisfaction of his judgment out of the said trust estate in the hands of the said *terre-tenants*. It is further averred, that the lands which the defendant had purchased of the trustee for the sum of $11,290.50, and the proceeds of which were to be credited on the "Blackford" judgment, was on the 25th September 1848, taken in execution by the sheriff of Washington county, to satisfy a judgment recovered by Lynch and Craft vs. Barnes and others, and sold to the defendant; so that said land is held by the defendant under the double title formerly acquired from the said trustees, and recently under the sheriff as before stated.

On the same, 7th April 1851, the chancellor ordered, that the application for leave to file said answer stand over until the hearing of the cause on its merits.

On the 21st April 1851, the auditor reported three statements or accounts.

No. 1 of judgments, claims against Barnes and Mason, prior to that of John Hanson Thomas, of March term 1839. allowing credits for the sum of $1,100, claimed by the complainant to have been paid on some of the judgments, now held by Mrs. Margaret Mason, and charging interest to the 5th of April 1851, they stand thus:

Henry Tiffany, balance after crediting payment made by Yost the trustee,
8th July 1840,    -    -    -    $500 00
Proceeds of sale made under *fi. fa.*,
7th January 1846,  -    -    -    3,903 06
6th October 1846,   -    -    -    767 67    $921 81

Thomas *vs.* Doub.

William Tiffany, Benjamin C. Ward and George Tiffany, crediting payment of $200, as made by the trustee Yost, 8th July 1840, - - - -    $1,723 93

John Trimble, use of the Bank of Baltimore, - - - - -    3,428 13

Brooks and Hotchkiss, crediting payment of $200, as made by the trustee, Yost, 8th July 1840, - - -    811 16

John W. Brown, use John Trimble, use Bank of Baltimore, crediting payment of $200, as made by the trustee Yost, 8th July 1840, - - -    1,113 97

Making as due Mrs. Mason, - -    $7,999 00

Wm. McKim, use Mrs. Mason, use John Doub, - - - - 2,250 03

Lynch and Craft, use John Doub, 1,515 76

Same, use same, - - - 1,351 21

Making as due Doub,    5,117 00

And in the aggregate,    $13,116 00

No 2, of the same judgments, excluding the credits for payments alleged to be made by the trustee Yost.

Henry Tiffany,    $1,585 20

William Tiffany and others,    1,941 43

John Trimble, use Bank of Baltimore,    3,428 13

Brooks and Hotchkiss,    1,077 32

John W. Brown, use Bank Baltimore,    1,347 76

Making as due Mrs. Mason,    $9,379 84

Judgments entered for the use of John Doub, as before stated,    5,117 00

   $14,496 84

No 3, of the moneys, land and note, to be treated as cash, received by John Hanson Thomas, from the trustees, on his last judgment with interest thereon to 5th April 1851.

Thomas *vs.* Doub.

| | |
|---|---|
| Cash paid 9th January 1840, - - - | $2,800 00 |
| Interest thereon, - - - - | 1,888 13 |
| Cash paid 17th April 1840, - - - | 5,000 00 |
| Interest thereon, - - - - | 3,290 00 |
| John Doub's obligation, - - - | 967 50 |
| Interest thereon, - - - - | 421 51 |
| Real estate sold 1st January 1844, - - | 2,312 50 |
| Interest thereon, - - - - | 1,007 48 |
| | $17,687 12 |

Which is to be applied in payment of—

| | |
|---|---|
| 1st. Mrs. Mason's judgment as per statement No. 1, - - - - - | $7,999 00 |
| 2nd. John Doub's judgments, - - | 5,117 00 |
| Leaving as applicable to Jno. Hanson Thomas' judgment, - - - - - | 4,571 12 |
| | $17,687 12 |

| | |
|---|---|
| Or, if statement No. 2 should be adopted, then to 1st Mrs. Mason's judgments, - - | $7,479 84 |
| 2nd John Doub's judgments, - - - | 5,117 00 |
| Leaving as applicable to Jno. Hanson Thomas' judgment, - - - - | 3,190 28 |
| | $17,687 12 |

John Doub vs. Abraham Barnes and others.—In chancery.

It is agreed, that the transcript of the record filed amongst the proceedings in this case, on the 13th day of June 1850, with the answer of the defendant Thomas to the complainant's amended bill, shall be considered as filed as evidence in the case.

It is also admitted, that since the filing of the original answer of said Thomas, to wit: on the 28th day of September 1848, the farm sold by said William Price and David G. Yost, by the agreement dated 23rd February 1844, to said Thomas, was sold by the sheriff of Washington county, under a *fieri facias* issued from Washington county court on a judg-

ment of *fiat* in said court, in a case of *scire facias* on a judgment in said court, against Abraham Barnes, Melchior B. Mason and John O. Wharton; the said *scire facias* having been made known to said original defendants and various *terre-tenants*, of whom the said Thomas was one, the complainant not being one of said *terre-tenants*. At said sale, said Thomas purchased in said farm for the sum of $1,182.17, and on payment of the same, he received, on the 3rd day of January 1849, a deed from the said sheriff for the said farm, which deed was duly executed, acknowledged and recorded, and the stamp thereon paid. It is further agreed, that the deposition of William Schley, filed herewith, shall be received as evidence in the cause, in the same manner as if the same had been given under a commission issued by order of the chancellor, subject to all exceptions as to the admissibility of said evidence, and subject to such other exceptions to the same as may be open to the complainant or to the defendant, John T. Mason, as trustee for Mrs. Margaret A. Mason. It is further agreed, that exhibit T, No. 1, (being merely a copy,) shall have the same effect as if it were the original agreement of which it is a copy. The complainant denies the right of the defendant to introduce and use the testimony admitted as aforesaid, as evidence upon the issues already joined in the cause, or to file a further or amended answer, for the purpose of introducing new proof or raising new issues, or to use the testimony now offered on such issues, and the foregoing agreement is made subject to said objections, on which this complainant relies.

If the chancellor shall overrule said objections and be of opinion, that the defendant, Thomas, is entitled now to introduce proof of the facts proposed to be introduced as aforesaid, upon the issue already joined, then the foregoing admissions, deposition and documents are to be read, and have like effect as if regularly introduced under an order for that purpose, and subject to like objections. And if the chancellor shall allow the defendant to file the amended and supplemental answer lately tendered, the same is to be treated as filed, and

as if general replication was entered thereto; and the foregoing admissions, deposition and documents, are to be read as evidence regularly taken under the issue joined on said answer, and subject to like exceptions: the object of the parties to this agreement being to avoid delay, and to admit summarily such testimony as be deemed legally admissible.

The complainant waives any objection which he might ground on the fact, that the case has been submitted and partially argued. And in reference to the defendant's right to introduce new testimony, the case is to stand as it did at December term last. The complainant is to have the liberty at every hearing, of relying on all objections to said testimony, although exceptions in writing may not have been filed thereto.—24th April 1851.

> Thos. S. Alexander, for Comp't.
> Cornelius McLean, for Mason and wife.
> Wm. Schley, for John Hanson Thomas.

And at the same time there was filed in the said cause the affidavit of William Schley, accompanied with sundry papers, in the words following, to wit:

John Doub vs. Abraham Barnes and others.—In chancery. Statement of William Schley as a witness:

I was the attorney of record for John Hanson Thomas, in the judgment of said Thomas against Abraham Barnes, Melchior B. Mason and John T. Mason, in Washington county court, rendered on the 9th January 1839, a short copy of which appears amongst the papers in the above cause.

As security for the same sum of money for which said judgment was given, the deed of trust, dated 9th January 1839, was executed by said Abraham Barnes, Melchior B. Mason and John T. Mason, to John M. Gordon and me; said deed is in court amongst the proceedings in this case having been filed on the 13th June 1850, with the answer of said Thomas, to the complainant's amended bill, and is marked T, No. 2. It was delivered prior to the 19th January 1839, and was on said last mentioned day placed for record in the office of the clerk of Washington county court, and after being recorded,

was returned to me. The several signatures of Abraham Barnes, Melchior B. Mason and John T. Mason, to the said deed of trust, are in their respective handwritings, with which I am acquainted. It was represented to me at the time, that all the slaves mentioned in said deed of trust, with the exception of some five or six, were the individual and separate property of said Barnes, and I have never heard this denied by any person; that is, I have never heard it pretended that any more than some five or six of these slaves belonged either to Melchior B. Mason or John T. Mason.

The letter herewith filed, marked WS, No. 1, was received by me in due course of mail, probably on the 8th or 9th November 1839, it is in the handwriting of William Price, Esq., one of the defendants in this case, both the body and superscription, everything but the endorsement.

The letter herewith filed, marked WS., No. 2, is, in the body and superscription, in the handwriting of the late David G. Yost, Esq. The name of D. G. Yost thereto subscribed in the handwriting of said David G. Yost, and the name William Price thereto subscribed, is in the handwriting of the said William Price. It was received by me within a day or two after its date.

After the receipt by me of said letter, marked WS., No. 1, I drew for said sum of $2,800, and received the amount. I am not able to say whether it was drawn for immediately or not. There was some correspondence on my part with the said Messrs. Price and Yost, or with one of them, (I cannot now recollect,) but I have no copies of any of my letters to them, or to either of them, in relation to the form of the assignment to be given to Mrs. Eliza Sprigg. Said Thomas refused to receive said money for some time, until the form of the assignment was agreed upon, (as I suppose conclusively agreed upon,) and afterwards, from the decease of a near connexion, his absence prevented the execution of the assignment. The assignment was not executed until the 27th January 1840. The paper now filed, marked WS., No. 3, is the said assignment, with the exception of the part thereof

since cut out. It was delivered to me by said Thomas on or about the day of its date, and was signed by him and a scrawl affixed as his seal. On its receipt by me, I forwarded the same to the said Messrs. Price and Yost, or to one of them, I cannot now recollect as to this. The memorandum thereon, No. 33, apps. M. C., 1839, was not on the said assignment when forwarded by me. I saw nothing more of this assignment until I received the letter herewith filed, marked WS., No. 4, and which reached me shortly after its date.

The mail between Hagerstown and Baltimore, was at that time, a daily mail. In said letter, marked W. S. No. 4, the said assignment, marked WS., No. 3, was returned to me. It was then unmutilated. On the 6th of March 1840, I received from said Thomas a receipt for said 2,800, and gave him back said assignment. He then cancelled the said assignment, by cutting out his signature and seal. The receipt was forwarded by me to Mr. Price. From the interval between the date of Mr. Price's letter and the substitution of the receipt, there was probably some correspondence between us, but of this I have no recollection. It is equally probable that I may have been absent on professional business, or that said Thomas may have been absent. The memorandum on the 3rd page of said letter, marked W. S., No. 4, is in my handwriting, and was made at the time of the transaction. The body of the letter and the superscription are in the handwriting of said William Price. I have no copy of the receipt forwarded, and do not recollect its terms or its date.

In this connexion I ought to state, that on the 15th January 1840, the said William Price and David G. Yost executed their note in my favor for five thousand dollars. I endorsed the note and passed the proceeds to Dr. Thomas, paying the discount out of the note, so as to pay to him the full sum of $5,000, less the discount. Hence, the credit is entered for $5,000, as of the day of the maturity of the note, although the actual payment of the reduced amount was really made in January 1840. When this note became due, at the request of Messrs. Price and Yost I had another note

drawn in my favor and endorsed by me, discounted for them, and with the proceeds of this note they paid in part, the former note. The second note was for a less amount than the former. I do not recollect the precise amount. Prior to the giving of said note, and some time in 1839, I was most positively assured that a large amount should and would be paid to Dr. Thomas, in part of his said judgment of 9th January 1839, in a very short time. This assurance was given to me by both the trustees, although more strongly, perhaps, by Mr. Yost; said Thomas was pressing me very strenuously to proceed under the deed of trust, and but for the assurance made to me by the trustees, and by me repeated to said Thomas, the latter would not, I am quite sure, have suffered the deed of trust to remain unexecuted. It was certainly understood by me, that the personal property would be sold, and even some of the slaves, if necessary, to raise for Dr. Thomas at least as much as one-half of his judgment, and that failing in other ways, the trustees would borrow the amount and pay the said portion of said judgment. The course of Dr. Thomas was considered harsh and rigorous by both the trustees, and especially deemed so by Mr. Price. My own connexion with the case was extremely unpleasant, from my relations of intimacy and good feeling towards, and with all the parties, and especially from my connexion with the deed of trust, marked Exibit 7, No. 2, as one of the trustees. Said note for $5,000 was given in January 1840, because the amount promised to Dr. Thomas, as aforesaid, and on which I knew he relied, (for I gave him the strongest assurances of his safe reliance on the promise of said Messrs. Price and Yost,) had not been provided by sales of personal property, or by loans, or the personal credit of the trustees. My own name and credit (which was then quite good for the amount, in all the banks in which I transacted business) was cheerfully afforded to them. Whether they requested the use of my name, or whether I tendered it, as one mode of aiding them in borrowing the money, I do not now recollect.

They were full as desirous as I was, that the amount pro-

mised to Dr. Thomas should be paid to him, at an early day, and I am quite sure, that they fully appreciated my embarrassment in having prevailed on Dr. Thomas, to forbear to press his claim under said deed of trust, marked T, No. 2.

The agreement marked T, No. 1, was made at Annapolis. The defendant John T. Mason, was privy to said agreement. I had supposed he was present at its execution, but in this I was in error, as he assures me that he was not present at that time. I know that it was understood between him and Dr. Thomas, that the latter would release to him a portion of the balance that would remain, after the said proposed settlement should be made between said Thomas, and said Messrs. Price and Yost; said Mason knew full well that in said proposed settlement, said two sums of $2,800 and $5,000 were intended to be credited, and he also knew that said pieces of land therein mentioned, were intended to be sold by said trustee, to said Thomas, in part of said judgment, at the price of $2,312.50, and that said agreement of said Doub for $967.50, was also intended to be assigned in further part payment of the same. I also knew that subsequent to the said agreement, marked T, No. 1, dealings took place between said Thomas and said Mason, based on the said agreement. I ought to state also, that at the time said agreement marked T, No. 1, was made, and during the time the same was the subject of negotiation, the said John T. Mason constantly insisted, that if the said trustees properly accounted for the estates which had come to their hands, all the judgments against him (including said judgment of said Thomas,) would be fully paid, and I am quite convinced that he was sincere in this opinion. It was my own opinion, that if the said trustees had been called to account in strictness, the said judgment of said Thomas, would have been satisfied to a larger amount than as provided by said agreement, marked T, No. 1. At the same time I was satisfied that they had encountered grievous embarrassments and enormous difficulties in the execution of their trust, and that from kind feelings towards Major Barnes and his family, and from a desire to satisfy creditors of vari-

Thomas vs. Doub.

ous classes, they had involved themselves in serious and fearful responsibilities.                                    W. Schley.

Annapolis, *April 25th,* 1851.

State of Maryland, *Anne Arundel county, to wit :*

On this 25th day of April 1851, before the subscriber, one of the justices of the peace of the State of Maryland, in and for Anne Arundel county, personally appeared William Schley, and made oath on the holy evangely of Almighty God, that the facts therein set forth are true, as therein stated, to the best of his knowledge, information and belief.

Sworn before J. W. Hunter.

WS, No. 1.

Hagerstown, *November 7th* 1829.

*Dear Schley.*—Draw on me for $2,800, and send me the order, to enter that amount of Dr. Thomas' judgment to the use of Mrs. Eliza Sprigg.   We shall not relax in our efforts to borrow the sum required, but you cannot imagine how difficult it is to get money.   Our sale is on the 28th instant.

Yours truly,                                    Wm. Price.

Wm. Schley, Esq., *Baltimore.*

WS, No. 2.

Hagerstown, *December 17th* 1839.

*Dear Sir.*—We received your favor of the 15th inst., relative to the claim of Dr. Thomas, and must say that it is impossible that either yourself or Dr. Thomas can feel a deeper regret or mortification, than we have done by our failure, to comply with arrangements made to raise the money required. From the day you left us until the present moment, we have been unceasing in our efforts to raise the money for Dr. Thomas.   We have employed agents to borrow money for us at a premium.   We have used our own exertions, but thus far we have failed, except the amount forwarded to you.   We have sold a small portion of the land, and are in treaty for other portions, and hope daily to receive money from this quarter.   The moment we get hold of it, we shall certainly make the remittance, and feel a confidence that we will be able to raise the money for the doctor, at an early day as it could

probably be raised by a sale of Barnes' negroes.    We should deprecate such a step on the part of the doctor.    For such is Barnes' attachment for his slaves, that, next to his own wife and children, he would rather part with any possession he holds on earth.    I hope this step will not be taken.    The claim is amply secured, and will certainly be realized, and to the amount required, in a few short days.    As to the mode proposed, of assigning a portion of the judgment for the amount borrowed, we shall, of course, have to agree to it; although we should prefer an assignment generally.    Will you have the goodness to send Dr. Thomas' receipt for the amount received, and an order for the assignment of the judgment in the form proposed.

We remain, dear sir, yours truly,

D. G. Yost,

Wm. Price.

Wm. Schley, Esq., Counsellor at law, *Baltimore, Md.*

WS, No. 3.

John Hanson Thomas, vs. Abraham Barnes and others.

Judgment in Washington county court, for $15,500, &c.

*Gen. Williams,*—Please enter the sum of $2,800, part of the principal of the above judgment, for the use of Mrs. Eliza Sprigg, for value of her received, but without recourse to me in any event.    This sum of $2,800 is so assigned, as of the 9th of January 1840; but it is, nevertheless, so assigned by me, without any intention that she, as assignee, shall have any right or equity to the payment of the said amount so assigned to her, in preference to my right of satisfaction of the balance on said judgment, but, on the contrary, it is intended by me, that the said sum is so assigned to her in subordination to my right to payment of the residue of said judgment, both principal and interest, in preference to her right of payment of the sum so assigned.    Witness my hand and seal this 27th day of January 1840.            ——  ———.

The following is written in pencil underneath the above : "Returned by Mr. Schley on the 6th March, and gave receipt for the sum of $2,800.

WS, No. 4.

HAGERSTOWN, *February 17th,* 1840.

*Dear Schley,*—Until this morning I had not seen the as-signment of Dr. Thomas to Mrs. Sprigg, for $2,800, and I feel constrained to say, that I cannot and will not agree to the arrangement.

He consents to receive Mrs. Sprigg's money in part pay-ment of his judgment against Barnes, provided he shall come in for the whole balance of the judgment before she receives anything under the assignment. If he has the conscience to propose such terms, what right have I to accede to them? with what face can he ask to throw the risk, if there be any, upon a lady who has no connexion with him or Barnes either, and who merely seeks a safe investment for her funds. I feel too indignant to trust myself in dwelling on this subject, and will only say that I shall be sorry if you shall have any un-pleasant feelings about the matter, and hope you will leave it to be settled between myself and the doctor. The trouble of returning him his assignment, which I enclose, you will, I hope, take from me and hand him, (if he desires any explana-tion,) this letter to read.

I decline for Mrs. Sprigg taking the assignment, and must only reimburse her out of the first money which comes to hand, which would otherwise go to Dr. Thomas.

If I had proposed to take from Dr. Thomas any part of his security, leaving him to resort to other means of satisfaction, which might or might not prove available, the case would be different. But as to the part of the judgment which I pro-posed to have assigned, he is not, and cannot be at risk, for the money is actually paid—it is in his pocket—one portion of his demand may be better secured than another, but the best of it is not more sure than the money. How could a creditor, under any possible state of circumstances, be preju-diced by the simple payment of money in part of the debt due him.

Our sales will take place on the 18th, 19th and 20th of March, and we are in strong hopes, from the numbers who have been to see the land, of making a considerable sale at

fair prices. The receipt for the other moneys paid, the note included, is all right. Yours sincerely, Wm. Price. Wm. Schley, Esq., *Baltimore.*

The assignment returned to Dr. Thomas, and his receipt for $2,800 accepted in lieu thereof, as of the 9th January 1840, 6th March 1840.

And at the same time came the defendant, John Hanson Thomas, by his counsel aforesaid, and filed in the said cause his exceptions, in the words following, to wit:

John Doub vs. Abraham Barnes and others.—In chancery.

Exceptions taken by the defendant, John Hanson Thomas, to the report of Cornelius McLean, Esq., auditor, filed in the above, on the 21st day of April 1851, and to the several statements marked respectively, statements Nos. 1 and 2, and statement No. 3, all filed on the day aforesaid. And the said exceptant takes and relies upon the following exceptions, that is to say:

1. To said report, and all said statements, upon the ground that they are gratuitous and unauthorised, and are calculated to produce an unfavorable impression as to the state of the accounts between this exceptant and other parties, and to produce much embarrassment and confusion in the argument and decision of the cause. This exceptant prays that they may be excluded and rejected.

2. If the first exception shall not avail, then this exceptant excepts to the said statement No. 1, in all and each of the following particulars, that is to say:

3. Because in stating the amount supposed to be due to said Margaret Mason or to her trustee, as assignee of the judgment of Henry Tiffany, no reduction is made of the amount thereof, which was entered for the use of David G. Yost, whereas deduction ought to have been made in stating the amount due on said judgment, of whatever amount is shown by the evidence in the cause to belong rightfully to any other person.

4. Because in stating the amount due on the judgment of William Tiffany and others, no deduction is made of the

amount thereby appearing to be due to David G. Yost. Whereas, in stating said judgment for the purpose proposed, no other or greater sum should be extended as due to said Margaret, or her assignee, than what does not rightfully belong to any other person.

5. Because, in stating the amount due on the judgment of John Trimble, no deduction is made of the amount thereof previously assigned to the use of Fayette M. Ringgold and Rebecca B. Ringgold; whereas, for the purpose for which such statements were prepared, such deduction ought to be made.

6. Because the judgment of John W. Brown is embraced in said statement; whereas, from the proof in the cause, said claim ought not to be embraced at all in said statement.

And this exceptant objects to said statement No. 2, in the following particulars:

7. Because it omits the several credits allowed in statement No. 1, in the several and respective cases in which credits are allowed in said statement No. 1.

8. Because the deductions claimed by the foregoing exceptions to said statement No. 1, as deductions which ought to have been made in respect of the several claims specified in said exceptions, are not made in said statement No. 2.

9. Because the said claim of said John W. Brown is included in said statement No 2.

10. And this exceptant specially excepts to the said judgment of Henry Tiffany in both and each of said statements, upon the ground that from the proof in the cause, it is sufficiently proved and established, that said Tiffany, in respect of his said claim as assented to said deed of trust, and is precluded from questioning the rights of purchasers under said trustees.

11. And this exceptant specially excepts to the said judgment of William Tiffany, Benjamin C. Ward and George Tiffany on the like grounds, *mutatis mutandis*, as are above stated in the 10th exception, in respect of the claim therein mentioned.

12. And this exceptant specially excepts to the said judgment of Brooks and Hotchkiss on the same grounds, *mutatis mutandis*, as specified in the said 10th exception.

And this exceptant excepts to said account No. 3 in the following particulars, that is to say:

13. Because, in, and by said statement, this exceptant is charged in effect, as if the sum of $2,800 therein mentioned, was part of the proceeds of the trust estate of the trust property which came to the hands of said trustees, whereas, it is not shewn, in any manner, that said sum of money, or any part of it, was any portion of the trust estate, much less of the estate derived in right of, or under said John T. Mason; and it is moreover established, that the same was not derived in any way from the trust estate which came to the hands of said trustees.

14. Because, in and by said statement No. 3, this exceptant is charged with the sum of $5,000, as if, in fact, the same was derived from said trust estate which came into the hands of said trustees; whereas, no such proof is given, but on the contrary, it is established that no part of said amount was derived from the said trust estate which came into the hands of said trustees.

15. And in respect of the two sums of $967.50, and $2,310.50, this exceptant insists that he is not liable to refund or account for the same in any way or to any person whatever; because, upon a fair and just account of the proceeds of the trust estate which came to the hands of said trustees, as the real property of said John T. Mason, and by them sold previously to the complainant, there was a sufficient amount and more, if the same had been duly applied, to have paid in full the said judgments mentioned in the said statements Nos. 1 and 2, and all other judgments against the said John T. Mason, prior to the judgment of this exceptant of 9th January 1839, and more especially, that the complainant cannot divert the application of said sums as made, because he failed to see, as he ought to have done, to the application of the purchase money for the land by him purchased.

And as to said memorandum No. 1, on said statement No. 3, this exceptant excepts in the following particulars, that is to say:

16. Because it assumes that this exceptant is liable to account for the sum of $17,687 12.

17. Because it applies $7,999, part of said assumed amount towards payment of the supposed claims of said Margaret A. Mason, as per statement No. 1.

18. Because it applies $5,117, part of said assumed amount towards payment of claims, designated as claims entered for the use of John Doub, in said statement No. 1.

And this exceptant excepts to said memorandum No. 2, in the following particulars, that is to say:

19. Because it assumes that this exceptant is liable to account for said sum of $17,687.12.

20. Because it applies $9,379.84, part of said assumed amount towards payment of claims, entered for the use of Margaret A. Mason, as per statement No. 2.

21. Because it applies $5,117, part of said assumed amount, towards payment of claims designated as judgments entered for the use of John Doub.

22. Because in none of said accounts is any notice taken of a sale to the Hagerstown bank, of part of the lands of said John T. Mason, at, and for the sum of $1000, although, it is shewn by complainant's exhibit B, that such sale was made, and it is not shewn that the purchase money was duly applied.

23. Because in said account No. 3, and in no other accounts stated, is any notice taken of, or regard had to the sales of Melchior B. Mason's lands, which in respect of most of the judgments embraced in said statements No. 1 and No. 2, (as upon reference to said statements will appear,) was, and is equally bound for payment of said judgments.

24. Because said accounts are imperfect and inaccurate, and specially based on the theory, that this exceptant is to bear the whole loss in exoneration of the complainant and all others.

In all which said several particulars, this exceptant insists, that said accounts and statements are erroneous, as well as in other respects, and he relies upon these exceptions and upon each of them.          Wm. Schley, Sol'r for Thomas.

And afterwards, to wit: on the 13th day of May 1851, came the said defendant, John Hanson Thomas, by his counsel aforesaid, and filed in the said cause his exceptions in the words following to wit:

John Doub vs. Abraham Barnes and others.—In chancery.

Exceptions taken by the defendant, John Hanson Thomas, to the sufficiency of the averments of the complainant's bill.

The said defendant excepts to the averments of the said bill in the following particulars:

1. For that, whereas, the said complainant by several accounts, which he has caused to be stated for illustration, and which have been returned by the auditor, assumes to charge this defendant with certain sums he received by this defendant in part of, or on account of the judgment of 9th January 1839. Yet the said complainant in and by his said bill has not impleaded this respondent as a judgment creditor, or as a recipient of trust funds, nor otherwise in any way save as a purchaser of lands.

2. For that it is not charged or shewn in and by said bill that any sum, or sums of money received by this respondent on account of said judgment, or of any other claim of this respondent, other than the price of the remnants of land purchased by this respondent, for the sum of $2,312.50, were the proceeds of the trust property conveyed by said deed of trust in the proceedings mentioned, and more especially it is not charged or shewn that they were or that any of them was the proceeds of John Thompson Mason's estate.

3. For that it is not at all charged in and by the said bill, that any sum or sums of money, (other than said sum of $2,312.50,) was or were received by this respondent from the trust estate, or from the trustee on account of any claim of this respondent, and more especially it is not so charged in respect of said judgment of 9th January 1839.

4. For that the said complainant by dismissing his bill as against Francis Dodge, George Feidt, John Winter, George Earnst and Horatio N. Harne, (as he did by leave of the court on the 28th February 1850,) has rendered the same defective for want of material and necessary parties, it not being averred in pleading, that the estate of Abraham Barnes conveyed to said Messrs. Price and Yost, and by them disposed, was exhausted, or if properly applied, would have been exhausted in the payment of older judgments against said Barnes, than the said judgments against which the said complainant, in and by his said bill seeks relief, and it being shewn by said bill, that said Dodge, Feidt, Winter, Earnst, and Harne were purchasers from said trustees of parcels of the said estate of said Barnes, and it not being shown in and by said bill, that said persons or any of them applied their purchase money or any part thereof in due order of priority.

Wm. Schley, *Sol'r for John Hanson Thomas.*

And afterwards, to wit, on the 19th day of May 1851, the chancellor passed his opinion and order in the said cause, in these words following, to wit:

John Doub vs. Abraham Barnes and others.—In chancery. March term 1851,

When this cause was brought before the court upon a former occasion, I attempted to show by reference to the opinion of the Court of Appeals, delivered at June term 1846, when the cause was for the first time before that tribunal, what sort of an equity the complainant must establish by allegation and proof, before he could have the relief which his bill asks for.

Adopting the language, and what I supposed to be the judgment of the superior court, I thought the complainant could not be relieved against the judgments held by Mrs. Mason, unless he could show that the holders of the judgments, under whom she claimed, assented to the deed of trust, and by their conduct induced the complainant and others to become the purchasers of the land bound by their judgments, and to believe that they would look to the trustees for the

38    v. 1

payment of their claims, and not the liens created by their judgments. The language which I have quoted, seemed to me to admit of but one interpretation, and that was that the assent of the judgment creditors to the deed must be shown, and conduct on their part from which the purchasers may fairly suppose, that the creditors waiving their liens on the lands, would look to the trustees for payment. This interpretation seemed to me to follow not only from the passage cited, but from what was said by the court in immediate connection with it, from which it is plainly to be inferred, that the judgment creditors were not to lose the benefit of their security, unless a case could be made against them which would render it fraudulent on their part to enforce their liens against the lands of the purchasers; for the court proceeded to say, that to allow the judgment creditors, after such a course of conduct, to enforce their judgments against the purchasers, would be to permit them to perpetrate a fraud; that the obvious consequences of such a course of procedure, on the part of the judgment creditors, would be to lull the purchasers into a false security, and to induce them to believe that a title would follow the payment of the purchase money.

From the order passed by me, on the 9th of December 1847, dissolving the injunction, which had been granted against Mrs. Mason, and directing an account preparatory to a final decree, settling the rights of all the parties, appeals were taken by several of the parties, and with regard to some of the judgments, the case is now here again, for further adjudication. The Court of Appeals remanded it for further proceedings, under the act of Assembly; being of opinion that the substantial merits of the cause, would not be determined by either reversing or affirming the order appealed from. Some additional evidence is now in the record, which it is contended by the solicitor of Doub, places his case upon firmer ground than it occupied at the former hearing. But I apprehend it will be found, if the construction placed by this court upon the opinion of the Court of Appeals, which has been already referred to, is correct, the complainant has not yet succeeded in making out a title to the aid of this court;

and hence much of the argument has been directed, to show that that construction was not altogether the true one, and that the Court of Appeals did not and could not have intended to say, that all the elements, which in my interpretation of their opinion were necessary to constitute an equity, to be relieved against these judgments, must concur.   It is now said, that mere acquiescence by the judgment creditors in the deed of trust to Price and Yost, though the purchasers of the trust estates were wholly ignorant of such acquiescence, and could not, therefore, have been induced by it to become purchasers, will yet be sufficient to protect the lands from the creditors.   The Court of Appeals, however, had said differently ; they said the judgment creditors must not only have assented to or acquiesced in the deed, but must by the fact of such assent or acquiescence, or by some other conduct calculated to lull the purchasers into a false security, have induced them to believe their title would be perfect, upon paying the purchase money to the trustees.   But how could assent or acquiescence induce such false expectations on the part of the purchasers, if they were ignorant of it when they purchased and paid their money?

It is said, however, that the fact that this case has been remanded for further proceedings, creates a strong presumption, that the Court of Appeals do not mean to hold the plaintiff to the proof of all those grounds of equity, or to that combination of circumstances which this court, in expounding their former opinion supposed to be essential.   Some proof, it appears, was taken after the decision of this court of December 1847, and was embodied in the record transmitted to the Court of Appeals.   And it is said that though the latter court could not regard this subsequently taken evidence, so as to make it the foundation of either reversing or affirming the decree appealed from, they might yet, and it is to be presumed, did look at it, in deliberating, whether they would remand the cause under the act of Assembly, for further proceedings ; and as when thus examined, it will not be found to establish the grounds of equity previously demanded of the complainant by

Thomas *vs.* Doub.

the opinion of this court, the Court of Appeals, if they had concurred in that opinion, would not have sent the cause back, because the result of the second trial must be the same as the first.    The answer to this argument is, that the order of the Court of Appeals, remanding the cause, does not limit the complainant to the proof then taken.    The order is general for the introduction of further testimony; and though the proof which the complainant had collected subsequently to the former decree of this court, might not be sufficient to make out an equity, assuming the reasons upon which that decree rested to be correct, still it by no means followed that he might not succeed in procuring such proof, if further time and opportunity was given him.    The Court of Appeals saw by this additional proof, that the record upon which this court decided the cause in December 1847, did not contain the whole evidence applicable to the questions in issue between the parties; and therefore they may have deemed it proper to authorise further proceedings, and new evidence to be collected, in order that full and complete justice should be done.    In the opinion of this court, the Court of Appeals saw the construction put upon their former opinion.    And it is certainly reasonable to suppose, if they did not concur in that construction, they would have said they could not but have supposed it probable, that if they remanded the cause without dissenting from the interpretation placed by this court upon their opinion, *that it* would be adhered to ; and therefore the idea that they did not dissent, is scarcely admissible.    It is not, I think, at all likely, that they would have left so vital a point to conjecture and inference, when a few words would have been sufficient to correct my understanding of their opinion, if I had fallen into error regarding it.    The presumption then, I think, is very strong, that the appellate court did not disapprove of my construction of their opinion of 1846, and that they remanded the cause to give the plaintiff an opportunity, if he could, to bring his case within that opinion so construed.    The question then is, whether the proof subsequently taken has accomplished this ? and upon a careful examination of it I am of

opinion that it does not. There is no evidence that the letter of the 3rd of October 1839, written prior to the deed of trust, was ever shown to the complainant, and as to the other letters, they could not have been seen by him when he made his purchase of March 1840, because they were written after that period.

The counsel in their arguments have addressed some remarks to the court upon the subject of directing issues to be tried by a jury, but under the circumstances, and as the case now stands, I do not think it would be proper to do so. My opinion upon the facts is decided, that the complainant has failed to prove such a case, as, according to my understanding of the decision of the Court of Appeals, he must prove, to entitle him to relief against these judgments. If I were to direct issues, it would be upon the hypothesis that my construction of the opinion of the superior court is the true one. It would be an idle waste of time, and an unnecessary expenditure of money, to send questions of fact to be decided by a jury, which, if found for the plaintiff, would not control my judgment. Of what avail would it be to the plaintiff, if the jury should find the existence of certain facts, which, though perhaps constituting a part of that combination upon which his equity to be relieved depends, leaves unascertained other facts material to the equity? My decision would still be against them, and his only remedy would be an appeal to the superior court. But that redress will now be open to him, and when the record goes up again, (if it should go up,) the appellate court will have all the materials before it, to pass a final judgment, the additional evidence now constituting a part of the record. Having disposed as briefly as possible of the questions between Doub and Mrs. Mason, the case, so far as the defendant, John H. Thomas, is concerned, remains to be considered.

When the case was last before the Court of Appeals upon the appeal of Dr. Thomas, an opinion was delivered by that court, which, as it strikes me, has left little or no discretion to this court, in regard to the questions pressed with so much

fullness and ability by his counsel. The case before me now, is precisely the same as was before the Court of Appeals, because, though I did not understand the counsel for Thomas, as abandoning the amended and supplemental answer proposed by him, to be filed, and the evidence taken in its support, still, as I think in the posture in which the case stands, he could not be permitted to file an amended answer, I cannot regard it or the evidence referred to, which can only be admitted, provided the amended answer is itself properly in the cause.

The case therefore, stands now in this court, as it stood before the Court of Appeals, when its opinion was pronounced ; and the same identical questions now raised, were raised and discussed in the latter court. In the argument before me, statements have been produced to show, and do show, that if the proceeds of the estate of John Thompson Mason had been properly applied, it would have extinguished the whole amount of the judgments against him, and no loss would have fallen upon any one. But this same ground was taken in the argument before the Court of Appeals, by the statement of the counsel of Dr. Thomas, made for the use of that court; and yet it was decided that the sums received by him from the trustees, on his judgment of the 9th January 1839, and the amount of the note of Doub, and the amount of his purchase of the remnant of the land of John Thompson Mason in 1844, were improperly applied in satisfaction of that judgment. The language of the Court of Appeals is so clear and explicit upon the several points now presented, that, unless I undertake to pronounce them in error, (which, of course, is entirely out of the question,) I can see no ground upon which the defences now set up for Thomas can be maintained. The whole ground occupied now, is covered by repeated passages in the opinion. In one place the court say : "In equity, the money paid to Thomas, or the price of the land sold to him, becomes the fund of the party who is prejudiced by the misapplication; and his resort is, not alone against the trustees in this case, but he may follow the fund again. When Thomas

purchased of the trustees, he knew of the existence of this deed of trust, and the agreement shows that he treated with Price and Yost as trustees, and has thus assented to the terms of the deed. He stipulated with them to make the sale only conditional, unless the title under their conveyance should prove unincumbered. He takes the land under a judgment, which could not legally be paid, until every dollar of Mrs. Mason's assigned judgments should be paid." "Doub is now called upon to pay those judgments, from the misapplication by the trustees of his purchase money, and the defendant, (Thomas,) who has paid nothing, wrests from him the only remnant of property from which he could be secured. He receives from the trustees, Doub's bond for the land purchased by him, which ought to have been applied to extinguish prior liens, and by the receipt of moneys countenances a clear perversion of the trust, and prevents the proper application of the fund. His agreement with the trustees to extinguish prior liens, shows that he knew such existed, and the only liens then outstanding, were Mason's and Lynch and Craft's." "When he received from the trustees the sum of $7,800, he must have known from this stipulation, that he was taking it to the exclusion of elder judgments, and by assenting to the deed as he did, why should not the parties aggrieved by this misapplication have redress against him." Again, speaking of the conduct of the trustees, the court say : "By a misapplication of the fund, they have anticipated the payment of Thomas' junior judgments, whether out of the complainant's identical money, or not, is immaterial. It was at all events a fund which should have been applied to the elder judgments, and no agreement between Thomas and the trustees can be permitted to divert it, particularly when it compels the complainant to pay a second time for his purchase, while Thomas, (upon the hypothesis that the trust fund is exhausted,) upon the judgments preceding him, pays not one cent for the land conveyed to him by the trustees; Thomas can therefore have no claim to profit by the complainants neglect."

But for the agreement between him and the trustees, the lands and funds applied to his judgment would still be at the disposal of the trustees for the relief of Doub. That agreement cannot in any form be permitted to overreach the trust or the prior creditors, to the prejudice of their judgments. Doub in every equitable point of view, his lands being held liable for those judgments, is one of those creditors, and has a just claim in a court of equity, to the relief prayed. It will thus be apparent, I think, that every ground upon which the defendant Thomas now relies to escape the claim upon him, to refund the money, which he received from the trustees in satisfaction of this judgment of 1839, and to account and pay for the remnant of land of John Thompson Mason, the price of which was applied in the same way, and for Doub's note of $967.50, is struck from under him. It is no answer to say that if the proceeds of the land of Mr. Mason, had been applied as it should have been, this judgment of his would have received as much, or more than has been applied in extinguishment of it. This view was presented to the Court of Appeals, and yet that court, in the most unambiguous terms, say the application was improper, and the money must be refunded, and the land paid for in relief of Doub. It is no answer to say, that the two sums of $2,800 and $5,000, were not paid by the trustees out of money received from Doub, for the court say, whether the payments were made out of complainant's identical money, or not, is immaterial. It was, at all, events money which should have been applied to these elder judgments. It is no answer to say, that the whole difficulty has grown out of the neglect of Doub to see to the application of his purchase money;—the reply is, that with respect to Thomas, the Court of Appeals say he was under no obligations to do so. Their language is, that Thomas can have no claim to profit by the complainant's neglect. But it is now objected, that the averments of the bill do not warrant a decree against Thomas as a receiver of money from the trustees, that the bill charges him as purchaser only; and therefore, although it may, and does appear,

that he has received from the trustees, moneys, which upon a bill properly framed, he would be compelled to refund, he cannot be made to do so upon this bill. It appears to me, however, that this objection, if good at any time, comes now too late; the cause has been to the Court of Appeals, and that court after a full discussion upon the merits, has decided that the defendant is liable to repay this money.

The dismissal by the complainant of his amended bill, can make no difference, because that bill does not supply the averments which, it is insisted, are necessary; the whole object and allegations of it being, to impeach the consideration of the last judgment held by Thomas, upon the ground of usury. The Court of Appeals must have decided upon the original bill, the answer to it, and the proofs applicable to the issues between the parties, as presented by that bill and answer. The Court of Appeals, by the 6th sec. of the Act of 1832, ch. 302, would unquestionably have remanded the cause to this court for further proceedings, through amendment of the pleadings, if the defendant had, prior to the former hearing in this court, excepted to the averments of the bill upon this ground, if they had thought the exceptions well taken; because, entertaining the opinion they did upon the merits, they must have been satisfied, that the substantial justice of the case required it. But the defendant did not make this objection upon the former hearing, and the point, therefore, was not before the Court of Appeals, who proceeded to hear and decide the cause upon its merits, as displayed by the record. The defendant, instead of excepting to the sufficiency of the averments of the bill, thought proper by his answer to explain clearly and in detail the whole of his case, and to rely upon the strength of that case so explained as a defence to the relief sought against him; and then, when the merits are decided against him, he seeks by objections which do not touch the merits, to drive the plaintiff to an amendment. It certainly is not supposed, that the Court of Appeals would have remanded the cause to this court, to enable the defendant to interpose this defence; no idea which they could possibly have

39      v. 1

entertained of the substantial justice of the case, would have prompted them to do that. If seeing that the justice of the case was with the complainant, they had thought they could not relieve him by reason of a defect in the frame of his bill, they would have remanded the record, that he might amend his bill; but surely they could not have designed, when they sent the record back, to allow objections to be placed in his way, which they would have returned to this court, to have removed. · My opinion is, that to permit this objection to be made now at this stage of the cause, would be giving the act of Assembly an effect, which was not designed by the legislature, and would be making it an instrument of injustice.

The fifth section intended to compel parties to state their objections to testimony, and witnesses in the inferior court, in order that the difficulty might, if practicable, be removed, before the expense of an appeal was encountered; and it was also the design of that section, to require of the defendants in equity to point out their objections to the averments of the bill, before the cause was decided by the chancellor; and the object of the sixth section was to authorise the Court of Appeals, when, in their opinion, substantial justice required it, to send the record back, that the objections to the pleadings might be removed, or further evidence taken. But I cannot think the legislature intended, that after an appeal and hearing upon the merits, objections of this character should be interposed. The Court of Appeals was no doubt authorised to remand the cause to get rid of such an objection, but not to put it in the way. Without, therefore, expressing an opinion upon the exception itself, supposing it can now be made, I am of opinion, the exception cannot be entertained at this stage of the cause. Since the cause was reinstated in this court, the auditor, under instructions of the solicitor of the complainant, and for the purpose of illustration, has made certain statements, which show that upon the principles which have been settled, the amount due from Dr. Thomas for the moneys and property for which he is responsible, is sufficient to pay the judgments which are entitled to be paid in priority

out of that fund, leaving a residue applicable to the payment of his own judgment.

In statement No. 1, credit is given for the sum of eleven hundred dollars, which receipts in the record show, was paid to the attorney of the judgment creditor, prior to the assignment of Mrs. Mason. In the statement No. 2, these credits are omitted, and the question is, whether they shall or shall not be allowed? These sums were paid after the rendition of the original judgments, and before they were revived by *scire facias*, at March term 1845, after which they were entered for the use of Mrs. Mason, they having been purchased from the judgment creditors by her trustee, with moneys settled upon her to her separate use.

When the *fiats* were rendered, these sums were not credited, nor when the judgments were entered for the use of Mrs. Mason, was there anything upon the face of the record, to shew that any portion of the money, for which the receipts were given, had been paid? The writs of *scire facias* were issued against the defendants in the judgments, and the *terre-tenants*, and the attorney who received the money, who at that time was the attorney of record of the plaintiff, appeared for the defendants and *terre-tenants*, and confessed *fiats*, without insisting on credits for the sums so paid; under these circumstances, to subject the judgments to be credited now with these payments, would be a manifest wrong to Mrs. Mason. When she bought and paid value for the judgments, she did not know, and could not know, that these sums had been paid. It may be said, that the *terre-tenants* were also ignorant of the fact, and this may be so, but their attorney knew, for he received the money, and they, therefore, had facilities of being informed upon the subject, which Mrs. Mason had not: the question here is, which of the two innocent persons shall suffer by a misfortune, which one must bear? and I am of opinion, it must be that one who could have averted the calamity by prudent precaution. Mrs. Mason had no connexion with these judgments when the money was paid, or when it should have been credited. When she bought and

took assignments of them, there was nothing upon the record to induce her to suppose, that the sums for which credit is now claimed had been paid, and hence, so far as she is concerned, there would, as it seems to me, be a manifest impropriety in crediting these sums to her prejudice. But although she was no party to the causes when these sums were paid, and when credit for them should have been claimed, the *terre-tenants*, (including the complainant,) were, and they were represented by the very attorney who received the money. By a little diligence they could have found out the fact, and thus avoided the dilemma in which they have placed themselves and Mrs. Mason; and, therefore, I think, they, and not she, must bear the loss. But there are some small sums marked for the use of D. G. Yost, the attorney, who received the money, and one sum for the use of Fayette M. Ringgold and Rebecca B. Ringgold, and these sums, I think, Mrs. Mason cannot recover. They were so marked when she received the assignments, and as to them there could have been no surprise, the assignments to her carried only the residue of the judgments, and she can only recover such residue. I shall, therefore, dissolve the injunction, so as to permit Mrs. Mason to recover by execution, at law or otherwise, the balances due upon the several judgments entered for her use, after crediting the sum entered for the use of D. G. Yost, and any sums she may have received since the former order of this court; and shall also send the case to the auditor, for the purpose of ascertaining the amount due from John Hanson Thomas, and applying it in conformity with the views herein expressed.                          JOHN JOHNSON, Ch'r.

John Doub vs. Abraham Barnes, et al.—In chancery. March term, 1851.

This cause standing ready for hearing and being submitted, the counsel for the parties were heard, and the proceedings read and considered. It is thereupon, for the reasons stated, adjudged and ordered, this 19th day of May, in the year 1851, by John Johnson, chancellor, and by the authority of this court, that the injunction heretofore granted to stay execution

upon the several judgments in the proceedings mentioned, against Abraham Barnes and others, which have been assigned to the defendant, Margaret A. Mason, be, and the same is hereby dissolved; and the said defendant is hereby declared to be at liberty to proceed, by way of execution or otherwise, to enforce the payment of said judgments, after crediting thereupon the sums marked for the use of D. G. Yost, and Fayette M. and Rebecca B. Ringgold, and such other sums, (if any,) as may have been paid her since the *fiats* were rendered. And it is further ordered, that this cause be, and the same is hereby referred to the auditor, for the purpose of ascertaining and reporting the amount due from the defendant, John Hanson Thomas, according to the principles settled by accompanying opinion, and applying the same to the payment of the judgments against John Thompson Mason, according to their priority, and all other questions are hereby reserved for further order.          JOHN JOHNSON, Ch'r.

On the 6th June 1851, the auditor made a report in execution of the chancellor's decree. He reports a corrected statement of the several judgments marked for the use of Mrs. Mason, crediting thereon "the uses marked for D. G. Yost, as directed by the said order, the said uses having been credited on the principal of the said judgment." But he has not credited the uses in favor of Rebecca B. and Fayette M. Ringgold, because, it now appears from testimony filed before the auditor, that their interest was purchased for the use of Mrs. Mason.

Upon these principles, and excluding the credits claimed as for payments made by the trustee, Yost, and charging interest up to the 27th May 1851.

The judgments now standing for the use of

Mrs. Mason, amount to,     -     -     -     -     $8,900 14

Those for the use of John Doub,     -     -     5,140 48

On the 20th June 1851, the parties agreed, that the auditor's reports be considered and treated as open to all exceptions on the part of all parties, on the hearing in this court and in the Court of Appeals, in like manner as if such excep-

tion had been specifically made, and that the cause be submitted for final decree in like manner, as if a re-hearing had been granted as to the uses in favor of Rebecca B. and Fayette M. Ringgold, mentioned in the auditor's report, and as if the testimony in relation thereto had been regularly taken under an order therefor.

The chancellor's remarks on the auditor's last report.

John Doub vs. Abraham Barnes and others.—In chancery.

The report of the auditor of the 27th of May last, appears to conform to the opinion and order of this court of the 19th of this month, except that the sums marked for the use of Fayette M. Ringgold and Rebecca B. Ringgold, are not credited upon the judgments referred to. It may not be improper to state that the direction to credit the said sum, was inserted at the suggestion of the counsel for Mrs. Mason from abundant caution, but as it now appears, that said sum had been assigned for her use, and therefore stands upon the same footing, and is subject by the same considerations, as affect that portion of the judgment which was actually marked for her use, the order, so far as it relates to that sum, will be modified. The report of the auditor, is therefore approved of, but there is a practical difficulty in preparing an order, so far as concerns the amount due Mrs. Mason. The injunction to restrain her from proceeding to enforce her judgments, has been dissolved, and she is now at liberty to coerce payment from the defendants. If she proceeds against them, and makes the amount due her, she cannot, of course, be permitted to recover from John Hanson Thomas; she cannot have a double satisfaction, and hence the difficulty in confirming the report of the auditor, and directing Dr. Thomas to pay Mrs. Mason. The counsel may, however, prepare an order, directing the defendant Thomas, to bring into court, the amount appearing to be due from him, to be paid to the party who may be entitled ; this of course applies to the amount ascertained to be due Mrs. Mason. With regard to the sum due Doub, that may be directed to be paid to him, or to be brought into court to be paid him.

*June 25th,* 1851.          JOHN JOHNSON, Ch'r.

John Doub vs. Abraham Barnes and others.—In chancery. July term, 1851.

This cause standing ready for hearing on the auditor's report, lately filed, and being submitted and the proceedings considered.

It is thereupon, this twenty-fourth day of July, in the year eighteen hundred and fifty-one, by John Johnson chancellor, and by the authority of this court, adjudged, ordered and decreed, that the auditor's report and statements filed in this cause, be, and the same are hereby ratified and confirmed, and that the defendant, John Hanson Thomas, forthwith pay or bring into this court to be paid to the defendant John Thompson Mason, as trustee for his wife, the defendant Margaret A. Mason, the sum of eight thousand nine hundred dollars and fourteen cents, with interest on the sum of five thousand and seventy-three dollars, part thereof from the twenty-seventh day of May last past, until so paid or brought in to be paid as aforesaid; and unto the complainant John Doub, the sum of five thousand one hundred and forty dollars and forty-eight cents, with interest on the sum of two thousand seven hundred and ten dollars, part thereof from the said twenty-seventh day of May last past, until so paid or brought into court, as aforesaid, and to the said complainant, his costs of suit to be taxed by the Register.

And it is further adjudged, ordered and decreed, that the defendant William Price, do account for the property and effects conveyed to the said Price and David G. Yost, lately deceased, in his lifetime, by the defendants Abraham Barnes, and others, as stated in the proceedings, and that this cause be, and the same is hereby referred to the auditor, with instructions to state said account from the pleadings and proofs now in the cause, and such other proofs, if any, as the parties or any of them may produce before him on giving the usual notice. And it is further adjudged, ordered and decreed, that the injunction heretofore granted in this cause be and the same is hereby dissolved, so far as to enable the defendant, John Thompson Mason, as trustee for his wife Margaret A. Mason,

to levy by process of execution of the judgments now entered for the use of the said Margaret A. Mason, the sum of money appearing to be due on said judgments, by the auditor's statement No. 4, and which amount in the aggregate to the sum of eight thousand, nine hundred dollars and fourteen cents; and in the event that the said defendant shall proceed by execution as aforesaid, to levy said sum of money of the complainant or any of the parties other than the said John Hanson Thomas, such party of whom said sum of money or any part thereof shall have been levied, shall be at liberty to apply to execute said part of this decree, which requires the said John Hanson Thomas, to pay to the said John Thompson Mason, as aforesaid, the sum of money hereinbefore mentioned, and all equities not hereby expressly adjudicated, be and the same are hereby reserved to the parties respectively; and liberty is likewise reserved to them and every of them, to apply from time to time for such order as may be necessary, to execute this decree and the principles thereof.

JOHN JOHNSON, Chr.

John Hanson Thomas, appealed from this decree and also from the orders of the 7th April 1851, and 19th May 1851.

This case was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

By *Schley* for the appellant, and *Alexander* for the appellee.

*Schley* for the appellant.

The only character in which J. H. Thomas is sued, is in that of a purchaser, and all that is required of him, is to bring into court the purchase money due from him, in order to pay judgments older than his own, and to the satisfaction of which latter judgment that purchase money had been applied. Now all the liens upon the estates of M. and J. T. Mason, are not equal to the proceeds of sale of their estates. The fund thereby created, if correctly applied, is sufficient to

satisfy them all, including the judgments of J. H. Thomas, and the commissions payable to the trustees.

It must be also remembered, that a portion of Mr. Mason's land remained unsold, when the bill of the complainant was filed.

When the amended bill was withdrawn, everything in relation to it was at an end, and because of this the appellant asked to amend his original answer, so as to introduce into the answer to the original bill, all the matters to be found in his answer to the supplemental bill, and which could properly belong to the case, after the supplemental bill was dismissed by complainant. Why then should the proposed supplemental answer be rejected? And even if that was rejected, why not admit the testimony which had been collected, so far as it was relevant to the issues still in the case?

When the Court of Appeals gives specific instructions, the chancellor, to be sure, must obey them. But the defendant was to answer, and in his answer must be at liberty to deny very much to be found in the bill, which, in his former argument, before the Court of Appeals, his demurrer necessarily admitted.

The Court of Appeals, it is true, shut out the evidence, of the rejection of which we now complain, but this was simply because it had been introduced into it, after the chancellor had decided the case, which was upon a former appeal.

The application which was made of the money due from J. H. Thomas, extinguished, *pro tanto*, the liens upon the land purchased by Doub, the complainant. What right has he to complain of that application? We apprehend none. The complainant Doub was guilty of gross neglect, in not seeing to the application of the purchase money, and has no right to ask that J. H. Thomas be prejudiced by such gross neglect. If the fund be enough to pay all, it is not necessary that No. 1 should be first paid, then No. 2, and then No. 3, &c. Although a legatee be paid his legacy, before all the debts are paid, and then owing to a *devastavit* and insolvency

40    v.1

of the executor, some of their creditors cannot get their money, yet if the assets in the hands of the executors were sufficient to pay legacies as well as debts, the unsatisfied creditors cannot claim of the legatee, the money which he received before the debts were paid; nor can the real estate of the deceased be sold, because of the insufficiency of personal assets thus caused.

The sum of $2800 which J. H. Thomas at one time received, was no part of the trust money, and is nowhere in the bill claimed as such, and the proof is, that the $5000, also received by him, was no part of the trust fund. For another sum, ($967.50,) land was received, and to that amount the liens of Doub's land were diminished, although if it had been paid over to the trustees, it might have been misapplied by them, as was Doub's money. No objection, it may be added, is taken to this in the bill. According to the rejected testimony, if it be admitted, there is no ground for demanding the $2,800, or the $5000.

In 4 *Gill, p.* 1, it is decided, that all the vendees of J. T. Mason's land must contribute, and the last purchaser is not bound to contribute the whole of his purchase money before older purchasers be called upon.

Much of J. H. Thomas' purchase money was applied to the payment of older judgments.

Exceptions which have been filed to the bill, require that much of the proof should not only be applicable to the case, if the requisite charges were found in the bill, but the necessary allegations to warrant the introduction of all that proof, must be found in it. See 4 *H. & J.*, 518. 6 *H. & J.*, 24. *Wesley vs. Thomas*, 6 *H. & J. Watkins and Stockett*, 6 *H. & J., Chalmers and Chambers*, so in 2 *H. & J., Strike vs. McDonald*, it was decided, that the plaintiff must get leave to amend his bill if he designs to introduce new matter. See also 1 *Gill*, 234, and 3 *H. & J., West vs. Hall*, especially in page 223.

The ground on which the complainant seeks relief, is that the creditors had assented to the deed of trust, and there-

by lost their liens, and if this was not the case, all the *terre-tenants* ought to contribute, except those whose purchase money had been correctly applied.

If Doub had seen to the proper application of his purchase money, all the older liens would have been paid off, and a portion of it would have remained to be applied to the payment of J. H. Thomas' judgment. Now a man cannot, by his own laches, create for himself an equity. *Story's Equity Jurisprudence, secs.* 105, 109, 477. 2 *Story, sec.* 1124 to 1135. See also 3 *Condensed Eng. Chan. Reports*, 276. *Broom's Legal Maxims,* 122, 323, 391, in 50 *Law Lib.* In 3 *Barr. (Pen. Rep.,)* 109, it is said, one person will not be allowed gratuitously to alter the position of another. Here Doub made the trustees his agents, and by their misconduct, Thomas is not to be prejudiced. 2 *Rawle,* 118, an administrator paid a claim against the estate *too soon;* and the estate afterwards proved to be insolvent. He cannot recover back what has been overpaid. 1 *Story's Equity, sec.* 64, *(c.)* A party in possession, must not be disturbed in that possession, for the benefit of another who has not a better equity.

This is not a case of subrogation, but of contribution. 5 *H. & J., Heigh vs. Bank.*

Doub claims a mere equity, and if it be not better than Thomas', his claim cannot be allowed. He was guilty of gross neglect in not seeing to the application of the purchase money. 6 *Gill,* 517, *Judge Frick's Opinion.*

2 *Denio,* 91, *A* gave a note to *B,* who endorsed it to *C. A* paid the interest. It did not, although it was intended to bear interest. *A* could not recover it back.

6 *Humphreys,* 248. 1 *H. & J.,* 405. 1 *H. & G.,* 258. 3 *H. & J.,* 357.

As to the recovery being according to the claim in the bill: See 6 *Gill's Reports,* 276, 285, *Magruder vs. Darnall.* In this last case, relief was asked of the defendant *as guardian.* The complainant could not recover anything which might be claimed of him as bailiff.

See 1 *Bland* 92, *(note* 1.)

The Court of Appeals, at the former hearing, did not decide upon any part of the merits; it only overruled the demurrer, in the the decision of which, all the facts stated in the bill are assumed to be true. The court at the former hearing merely decided, that while the facts of the case are unchanged, while all the allegations in the bill are admitted or proved, and no additional circumstances are relied upon by the defendant, the law of the case is as the court pronounced it to be. It left the defendant still at liberty to put the complainant to the proof of all his allegations, and to introduce into the case any equitable defence. Besides this, the demurrer was to matters no longer in the case. The supplemental bill which the complainant has dismissed, is as if it had never been a part of the case, and the supplemental bill furnished the ground for the demurrer. The two bills were filed for quite different purposes. The original bill was to postpone the judgments of Thomas; the other sought to cut them down. The attention of the court in disposing of the demurrer was necessarily confined to the allegations to be found in the bills, and it was then obliged to assume that everything to be found in either of them, was true, although, now the court is bound to disregard everything in either of them, which is not admitted, or legally proved.

*Alexander* for appellee.

It appears that there was a mortgage of negroes to J. H. T., to secure the payment of his claim. Of these negroes no account has been rendered, but the mortgagee has under his control a fund for the payment of his claim.

The deed of trust in 1839, is a conveyance of all the real estate of the three. Thomas assented to its provisions.

He authorised the purchasers to pay the purchase money to the trustees, and was bound by the payment to them.

There were upwards of one hundred judgments. In very many of them Price or Yost was the counsel of the plaintiff, and had the control of them.

In November 1839, there was a sale to Cromer; in March

1840, a sale to Doub; and in April 1840, another sale to Cromer. In January 1840, J. H. Thomas got $2800, and in April 1840, $5000 more, before any others were paid. He then had a *sci. fa.* on the judgment, and an agreement, dated in February 1844, by which he received from them a conveyance of a part of the trust estate, valued at $2312.50; the obligation of Doub to the trustees for $967.50, (a part of the purchase money due from Doub,) and the note of the trustees for $2136.42.

*1st Point.* Chancellor acted correctly in excluding the amended and supplemental answer; and, moreover, from such an order no appeal will lie. 2 *Daniels' Chancery Practice*, 337. 1 *Bland*, 162, *McKim vs. Thompson.* 10 *Vez.*, 401, *Wells vs. Wood.* 19 *Vez.*, 631, *Cushing vs. Townshend.* 1 *Vez. and Beam.*, 149, *Livesay and Wilson.* 4 *Sim.*, 54. *Greenwood vs. Atkinson.* 4 *John. Ch. Rep.*, 375, *Bowen vs. Cross. Mitford's Pl.*, 390.

An appeal for this will not lie. 2 *Har. and Gill*, 79, *Wall vs. Wall.* 6 *Har. and John.*, 151, *(note,) Hawkins vs. Jackson.* 7 *G. & J., Boteler vs. The State.* 2 *Gill*, 437, *Randall vs. Glenn.* 7 *Gill*, 23.

*2nd Point.* This court, upon the former appeal, has decided, that the funds received by Thomas on account of his last judgment, ought to be applied to the payment of the judgments of Mrs. Mason, and of those also which have been entered for the use of the complainant.

An appeal could not be taken from the order overruling the demurrer.

This opinion, expressed on the appeal formerly taken by the present appellant, is conclusive. For this, reliance was had on the following authorities: 2 *Bland*, 24, *Crapster vs. Griffith.* 1 *John. Ch. R.*, 189, *Gelston vs. Codwise.* 25 *Wend.*, 313, *Hosack vs. Rogers.* 12 *Peters*, 488, *Ex-parte Sibbald.* 3 *Howard*, 413, *Washington Bridge Company vs. Steuart.* 4 *H. & J.*, 497, *Clerklee vs. Mundell.* 5 *H. & J.*, 245, *Hammond vs. Ridgely.*

*3rd Point.* The appellant is accountable in this suit for trust

funds paid to him by the trustees, in breach of their duty as trustees.

In support of this, reference was given to 2 *Story's Equity*, sec. 1257. 7 *Vez.*, 166, *Hill vs. Simpson*. 17 *Vez.*, 152, *McLeod vs. Drummond*. 4 *Mad.*, 332, *Keane vs. Roberts*. 2 *S. & S.*, 199, *Watkins vs. Cheek*. 1 *Young and Col.*, 568, *Cousett vs. Bell*. 1 *Sch. and Lef.*, 253, 262, *Adair vs. Shaw*. 1 *Peters*, 309, *Mechanics Bank vs. Seton*. 2 *Brock.*, 423, 433, *Wallis vs. Thornton*. 1 *John. Ch. R.*, 566, *Murray vs. Ballow*. 7 *John. Ch. R.*, 150, *Fields vs. Schieffelin*. *Dav.*, 242, *Shipley vs. Rangely*.

Certainly, if Doub had obtained an injunction to restrain the trustees from misapplying his purchase money, it would be no answer to such an injunction to say, that there were other lands to be sold, and which would be sufficient to satisfy elder incumbrances, and because of this, the trustees ought to be suffered, if they chose, to pay off the judgment of J. H. T.

John H. Thomas having notice of the deed of trust, in fact authorised Doub to pay to the trustees, and released him from all obligation to see to the application of the purchase money. He was not at liberty to sanction a breach of trust by the trustees.

The payments to J. H. Thomas are to be considered as derived from trust money. If it be necessary to show that the trustees, at the time when they made these payments, had trust money in their hands, we have it in the proof of the sale of the personal property, and of the sales of the lands to Cromer and Doub.

J. H. Thomas cannot ask any contribution of Doub, as he assented to the deed, and agreed that the trustees should act according to its provisions. Doub, on the other hand, does not ask contribution, but that the land which Thomas got, or its value, should be taken from him and be applied to the satisfaction of elder judgments, before Doub's land is charged with the payment of them.

It is objected to the bill of complaint, that it has not the necessary averments. But the answer shows the equities; it

states wherein the breach of trust consists. He has taken a part of the purchase money of Doub, and also remnants of land, to which Doub might have resorted.

What is the worth of the exceptions, that are filed?

The case, after being in this court, goes back in order that it may be tried upon its substantial merits. It was remanded by virtue of the act of 1832, ch. 302, sec. 65, '6, and afterwards the exceptions are filed. It is discussed first in chancery, and then in this court, upon its merits, the exceptions being kept back. Can the exceptions be filed after the case has been remanded by this court; and the chancellor be prevented from deciding the case according to its merits, and the directions given by this court?

As to the application to file an amended and supplemental answer. The amended bill was dismissed, and the dismissal of that, it is supposed, rendered another answer necessary, yet, the July, September, November, and part of March, terms had expired, before the application was made. But the authorities already cited will show, first, that the chancellor did right in refusing to give leave to file another answer; and 2ndly, that from his order and refusal, an appeal will not lie. The appellant can have no right to complain here, that the chancellor did not at once act upon the application for leave to file an amended answer. The answer tendered, presented no new ground of defence.

*Schley*, in reply.

The case now in court, is undeniably in many respects, unlike the case which was here upon the former appeal. The amended bill which has since been withdrawn, gave rise to the demurrer, which was then to be disposed of by the court; and while the case was pending upon the demurrer, everything alleged in the bill (original or amended,) must be assumed to be true; while upon this appeal, everything necessary to make out the complainant's case, which is not admitted, must be established by legal proof.

The appellant, also insists, that J. H. Thomas is not bound

to contribute at all, because it is demonstrable that the proceeds of the lands of John T. Mason, if properly applied towards the discharge of the liens thereon, would have availed to pay all those liens in full, inclusive of so much of the appellant's third judgment as was paid out of said proceeds. Of course, the appellant has not received more of said proceeds than he was entitled to receive ; moreover, the lands of Melchior B. Mason were also bound by the third judgment of the appellant, and by all the judgments thrown by the decree upon the appellant.

Upon the pleadings and evidence, the complainant cannot recover anything against the appellant. He cannot claim on the ground of contribution, as his bill does not seek relief on any such ground ; and such decree is not consistent with the specific relief asked, or with the case made by the bill.

He cannot claim against the appellant as a purchaser of land, because in respect to the larger purchase, it is admitted the purchase money was properly applied; and as to the appellant's small purchase, it is not claimed by the bill, except upon the ground of a mistake in its application to the judgment of the appellant; and now upon the evidence it is established that there is no such mistake.

He cannot charge the appellant as the recipient of trust funds, because there is no charge of this character contained in the bill.

The opinion of the court was delivered by LE GRAND, C. J.

This case was before the late Court of Appeals, at December term 1849. It was then remanded to the court of chancery, since when, the proceedings there had, have not, in any material degree, changed the questions which we are now called upon to decide.

To the original bill of complaint the appellant had filed his answer. The character of the answer, or, other circumstance, induced the complainant to file an amended bill. To this amended bill, the appellant demurred, but the chancellor over-

ruled the demurrer and ordered the defendant to answer, and at the same time, dissolved the injunction before granted; directed an account to be taken for the purpose of ascertaining the sums to be contributed, by the several purchasers from the trustees, towards payment of the judgments mentioned in the proceedings, and also, an account against Price, the surviving trustee.

From this decree, the defendant Thomas appealed. The late Court of Appeals sustained the chancellor in his overruling of the demurrer, and pronounced a full opinion on the merits of the entire cause. The case was then remanded to the court of chancery for further proceedings, when the complainant Doub, after the defendant had answered it, dismissed his amended bill; whereupon, on the 7th April 1851, the defendant Thomas filed his petition, for leave to file an amended and supplemental answer to the original bill. This petition was accompanied by the amended and supplemental answer, which denied that the sum of $2,800, was derived directly, or indirectly, from the proceeds of sales of the trust estate, averring, that the defendant urging payment of his last judgment, the trustees prevailed on Mrs. Eliza Sprigg, to advance said sum of $2,800, which was to be applied in the purchase of so much of said judgment on her account: that the money was received by the defendant, under an arrangement for a purchase on account of Mrs. Sprigg, of a part of his judgment; and pursuant thereto, an assignment was executed by the defendant, of a part of his judgment in favor of Mrs. Sprigg, which was forwarded to the trustees, and was at one time on file in Washington county court. At a subsequent date, however, this assignment was returned by the trustees, and at their request, the defendant gave them a receipt acknowledging the payment to him by the trustees, of the said sum of $2,800, on account of the judgment. The answer states, that the payment of $5,000, was made by the joint note of the trustees in favor of William Schley Esq., for that sum, dated the 15th January, at ninety days, which was discounted at the Farmers and Merchants Bank, and the proceeds

received by the defendant; and for the accommodation of the trustees, this note was renewed for a lesser amount.   The defendant avers, that the note for $5,000, so given by the trustees, was intended by them to be a personal engagement, and as such, was accepted by the defendant; and there was no undertaking or agreement, or understanding, that the same was to be paid out of the trust funds received or to be received by the trustees, or that the same was not to be paid in case sufficient funds were not received or should not be received by them, or that in any event the sum so received by the defendant should be refunded.

On the same day, (7th April 1851,) the chancellor ordered, that the application for leave to file the amended and supplemental answer, stand over until the hearing of the cause on its merits.   At the final hearing the chancellor refused to allow the defendant to file his answer, and decreed that he bring into court, or pay to J. T. Mason, as trustee of his wife, the sum of eight thousand, nine hundred dollars and fourteen cents, with interest on the sum of five thousand and seventy-three dollars, from the 27th May 1851, until paid, and unto the complainant Doub, the sum of five thousand one hundred and forty dollars and forty-eight cents, with interest on the sum of two thousand seven hundred and ten dollars, from the 27th May 1851, until paid.   These amounts were ascertained by the fourth audit contained in the record, as that of liens on the purchase of Doub, to which his purchase money ought to be applied, and for which, the defendant Thomas was liable, having improperly received it to the exclusion of prior incumbrancers.

It is the correctness of this decree which is now before this court; the case differing from its condition when it was before the court at December 1849, only in this :—the petition and offer to file an amended answer of the character indicated.   The dismissal of the *amended* bill of the complainant, cannot affect the merits of the cause ; it merely assailed the validity of the judgment of Thomas, on the ground of usury.   By the dismissal it left the cause, so far as the merits

are concerned, upon the statements of the original bill and answer, as they appeared before the Court of Appeals at its December term of 1849.

The first question for our consideration is,—was the refusal of the chancellor, to allow the defendant Thomas, to file his amended and supplemental answer, such an error, if error at all, as can be corrected by this court;

It is not the *right* of a party to file an amended answer. Before it can be done the leave of the court must be obtained, and this, is never granted, except under peculiar circumstances verified by affidavit. The rule upon this subject is, says chancellor Bland, 1 *Bland*, 162, "that the defendant must move to put in a supplemental answer, and accompany the motion with an affidavit, in which he must swear, that when he put in his answer, he did not know the circumstances upon which he applies, or any other circumstances upon which he ought to have stated the fact otherwise, or that when he swore to his original answer, he meant to swear in the sense in which he now desires to be at liberty to swear." And in 2 *Daniell's Chancery, (Perkin's edition,)* 914, we find it stated that, "although the court will, in cases of mistake, or other cases of that description, permit a defendant to correct his answer by a supplemental answer, *it always does so with difficulty,* where an addition is to be put upon the record prejudicial to the plaintiff, *though it will be inclined to yield to the application, if the object is to remove out of the plaintiff's way the effect of a denial, or to give him the benefit of a material admission."* * * * * "And it is to be observed, that the court will not allow a supplemental anwer to be filed, unless on new matter, nor unless a sufficient reason appears for not having inserted it in the original answer."

The defendant, although he accompanied his petition with the draft of his answer, yet, did not accompany it with an affidavit stating circumstances, bringing it within the rule to which we have adverted, and on this ground, if there were none other, we think the chancellor justified in his refusal to allow it to be filed. But aside from the stringency of the rule

governing such applications, we perceive no prejudice to the defendant, by the decision of the chancellor. In his answer to the original bill, the defendant admitted the receipt of the five thousand dollars, and also, that of the twenty-eight hundred dollars, referred to in the amended answer. In the answer to the original he explained that the sum of five thousand dollars had been paid him, by means of a discount, effected on a note of Messrs. Price and Yost.

· The only difference, in this particular, between the answer filed and the one offered, is, that in the latter is given a fuller and more detailed explanation of the manner and time when he received these two sums of money. In the first, he merely admits the receipt of the $2800, whilst in the latter, he explains that it was derived from Mrs. Sprigg. In the view we have of the case we do not perceive that the additional particularity of the amended answer would have availed, to the advantage of the defendant, if the chancellor had permitted the answer to have been filed. But if we were of a different opinion, still, it is not in the power of this court to remedy the defect. The application rests within the discretion of the court of chancery, and the exercise of such discretion is not cause of error, or matter from which an appeal will lie. *Wall. vs. Wall.*, 2 *Harr. & Gill*, 79. *And* 6 *Harr. & John.*, 151, (note) *Hawkins vs. Jackson.*

· This being so, we are called upon to decide the cause on its merits, as presented independently of any advantage which the filing of the answer would have given to the defendant Thomas. What those merits are, we conceive to be finally settled, so far as this record is concerned, by the opinion of the Court of Appeals of December term 1851, which is equally binding on the chancellor and this court. *Hambleton vs. Tenant*, 4 *H. & J.*, 440. *Clerkee vs. Mundel*, 4 *H. & J.*, 197. *Mong vs. Bell's admrs.*, 7 *Gill*, 244. And the case of *Young vs. Frost*, decided at this term.

· The judge who delivers this opinion, speaking for himself, has no hesitation in saying, that whilst he considers himself bound by the action of the late Court of Appeals in this case,

he does not perceive the correctness of that decision, and that if the case was before the court for the first time, he should hold that the complainant Doub is not entitled to any relief against the defendant Thomas. He thinks the whole case shows, that all, or if not all, the principal difficulties which environ this case and himself, have been brought about by his own culpable negligence, and that in justice, he, and not Thomas, is responsible for the consequences of his own indifference to the manner in which his purchase money was applied. It was in his power, and it was his duty to have seen to its proper appropriation. He neglected this, and therefore, in the opinion of one of this court, has no just cause of complaint against either the defendant Thomas or the other judgment creditors. But the late Court of Appeals thought differently, and their opinion is binding on the new court.

Before proceeding to examine the opinion heretofore pronounced, we will advert to the argument urged with so much ability by the counsel for the appellant, that the decision of the Court of Appeals *only decided that the defendant should answer the amended bill.*

We do not concur in this opinion. Independently of the act of 1832, chap. 302, the argument of the learned counsel would be unanswerable; but by the 6th section of that act, it is made the duty of the Court of Appeals, "in its order remanding the cause to express the reasons for the remanding, and also *to determine and declare the opinion of said Court of Appeals on all points which may have been made before said Court of Appeals, or which may be presented by the record.*" And in addition to the enjoining of this duty, the same section makes each decision of the Court of Appeals, *"conclusive,"* as to the points finally decided.

It is clear from the language of the act of 1832, that the Court of Appeals not only had the right, but it was their *duty* to determine and decide all points raised or presented by the record. In undertaking to do so, the court did not, therefore, transcend the limits of its authority, but merely compli-

ed with the directions and command of the legislature. That the cause was remanded under that act, is clearly shewn by the terms of the decree.

This being so, we are now to inquire what it was that the Court of Appeals decided. We do not see how any construction different from that of the chancellor's, can be placed upon the opinion pronounced. We understand it as explicitly deciding, that the complainant Doub had the right to insist upon the application of his purchase money to the payment of the liens on his land, and that the defendant, Thomas, was liable to him, and the judgment creditors whose liens were of a prior date to that of Thomas', for the amount which he received from the trustees in Doub's note; the two payments of $2,800 and $5,000 and also for the amount of purchase by him of J. T. Mason's land; the court say:

"The payment of the trust money to Thomas, who was under the circumstances not entitled to it, whether the money of Doub or other purchasers, established such a relation between all of them, that if any one of them is called upon to pay again, there is such privity between him and all the others, that he can seek in a court of chancery to have the money restored and applied. *In equity, the money paid to Thomas, or the piece of land sold to him,* becomes the fund of the party who is prejudiced by its misapplication, and his resort is not alone against the trustees in this case, but he may follow the fund." Again; "*no arrangement* with the trustees could let him in before his judgments attached in their prior order." * * * * * "The land purchased by Thomas and not paid for, is equally liable in equity to the payment of these judgments." * * * * "He, (Thomas,) takes the land under a judgment, which could not be legally paid until every dollar of Mrs. Mason's assigned judgment should be paid." He receives from the trustees, Doub's bond for the lands purchased by him which ought to have been applied to extinguish prior liens, and by the receipt of moneys, countenances a clear perversion of the trusts, and prevents the proper application of the fund." And in speaking of the $7,800, the court say, he

must have known "that he was taking it to the exclusion of elder judgments, and by assenting to the deed as he did, why should not the parties aggrieved by this misapplication, have redress against him ?"  And in addition to all this, the court say, "*it is nothing to the purpose to say that Doub has forfeited his standing in a court of equity by his own negligence.*" And that the trustees, by the misapplication of the funds, they have anticipated the payment of Thomas' junior judgments, *whether out of complainant's identical* money or not, is *immaterial.*"

When the case was last before the court, there was no exception to the sufficiency of the averments of the complainant's bill, and under the 5th sec. of the act of 1832, chap. 302, the court could not notice any such insufficiency. The case was therefore decided upon the facts exhibited in the *answer;* and although some of them related to matters in regard to which there were no averments in the bill, yet, under the fifth section of the act of 1832, in the absence of exception to the sufficiency of the averments of the bill, the court was authorised to consider them as constituting a part of the equity of the cause.  In the case of *Oliver vs. Palmer and Hamilton,* 11 *Gill and John.*, 442, the point was raised by the appellant's counsel, that neither the case stated in the bill, nor the case attempted to be proved, shew any title in the complainants to the interposition of a court of equity. To escape from this objection, the appellees insisted, that even if their bill were too inartificially drawn, by reason of an insufficiency of its averments, to entitle them to the relief sought, yet, the *proof* in the cause having clearly established their right to the interposition of a court of equity, the appellants were, by the fifth section of the act of 1832, chap. 302, precluded from urging as a ground of reversal, any such defect in the bill; and the court say, that if the assumption of the appellees had been correct in regard to the efficacy of the proof, they entirely concurred in the position assumed.  This interpretation of the act of 1832, clearly justified the court in looking to the whole case, without being restrained by the

technical rules of pleading, as applied to the averments of the bill. The chancellor had decreed an accounting and directed the preparation of an audit, in conformity with the principles which he had recognized and decided, and whether the subject matters to which he referred were covered by the averments of the bill, could not be a question on the decision of which a reversal of the chancellor's decree depended; for under the act of 1832, no such objection could avail in the Court of Appeals, unless it had been made in the court below. No such objection had been interposed.

When, however, the cause was remanded, the defendant did except to the sufficiency of the averments in the bill. And it is conceded, that the bill only proceeds against the defendant Thomas, on the hypothesis of his being a purchaser of lands, for which he has not paid the purchase money, and not against him for money belonging to the tract which he has received, and which ought to have been applied to the payment of liens, prior to his own, on Doub's purchase. We think, therefore, that the cause must be remanded, so that the complainant may so amend his pleading, as to embrace the whole case. In remanding it, in obedience to the mandate of the act of 1832, we give such direction to the court below as in our opinion the merits of the cause require. Under the instruction of the opinion heretofore pronounced, and which, for reasons already given, we are bound to conform to, we determine and decide, that on amending his bill, if no other facts or circumstances be shown, by the pleadings and proof, varying the nature of the dealings of the defendant Thomas with the trustees, from the account given of them in his answer to the original bill, or that contained in his proposed supplemental answer, the complainant will be entitled to the relief which the chancellor has already decreed him.

We consider the late Court of Appeals as having decided the case in his favor, admitting the truth of all the explanations contained in the supplemental answer; and we consider also, as did the chancellor, that the opinion then pronounced,

covers the question of application of the purchase money of the lands liable to liens.

The cause will be remanded to the court of chancery, to enable the complainant to amend his pleadings.

Eccleston, J., delivered the following dissenting opinion:

I concur with the majority of the court in the opinion, that this case ought to be remanded, for the purpose of having the averments in the bill amended. Exceptions having been taken to the averments, the complainant is not entitled to a decree under his bill, as it now stands, for any trust funds received by Thomas from the *trustees.*

When the bill shall be amended, the defendant will have the right to put in an answer and to offer proof in support of it. These proceedings may, very materially change the aspect of the case from what it was at any prior stage; and especially, from what it was when last before the late Court of Appeals. If after the chancellor shall pass his decree in the altered condition of the cause, it shall be brought before us, I think it will then be time enough for us to determine how far the former decision of the appellate court must govern and control the case in its new aspect.

*Cause remanded.*